183 So.2d 891 (1966)
TWIN STATES INSURANCE COMPANY
v.
James Edward BUSH.
No. 43813.
Supreme Court of Mississippi.
March 7, 1966.
Sullivan, Sullivan & Walker, Hattiesburg, for appellant.
Simrall, Aultman & Pope, Hattiesburg, for appellee.
RODGERS, Justice:
This case came to this Court from the Circuit Court of Forrest County, Mississippi, in which a jury verdict and judgment were entered in favor of the appellee. Appellant, Twin States Insurance Company, (hereafter referred to as Insurance Company), made a motion for a new trial. The motion was overruled and the Insurance Company appealed to this Court.
The record reveals the following facts. James Edward Bush purchased a 1962 Pontiac Bonneville four-door automobile from Roscoe Moore Pontiac Agency. Part of the purchase price was financed by Mississippi Motor Finance, Inc. At the time the loan contract was entered into, appellee purchased an insurance contract from appellant, Insurance Company, insuring the automobile against damages arising out of collision. The policy provided that "Any loss hereunder is payable as interest may appear to the named insured and Home Finance Company or Mississippi Motor Finance, Inc."
Section 11 of the insurance policy provides that:
"Subrogation. In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights."
*892 The insured automobile was involved in an accident on May 15, 1962, at a time when the insurance policy was in full force and effect, and was damaged in the sum of $1,160.41.
While appellee was recuperating from the accident, his automobile was taken to a repair shop operated by Charles Hyde. Appellee learned that the frame of the automobile was bent and that the adjuster-agent of the Insurance Company had been to see Mr. Hyde and they were in a controversy with reference to the repair of the bent frame. Appellee claimed that he had nothing to do with the arrangement for the repair of the automobile, but that in view of the fact that the frame was bent, he decided to trade his damaged automobile. He purchased a new automobile from Roscoe Moore Pontiac Agency and traded the damaged automobile to the company as part payment on the purchase price. He thought that he traded the automobile as a damaged automobile, but later, an insurance adjuster came to his home and asked him to sign a paper. He did not read the paper but admitted that the proof of loss shown him was the paper which he signed. This proof of loss contained the following language:
"The Insured hereby assigns, transfers, and sets over to the Insurer any and all claims or causes of action of whatsoever kind and nature which the Insured now has, or may hereafter have, to recover against any person or persons as the result of said occurrence and loss above described, to the extent of the payment above made; the Insured agrees that the Insurer may enforce the same in such manner as shall be necessary or appropriate for the use and benefit of the Insurer, either in its own name or in the name of the Insured; that the Insured will furnish such papers, information, or evidence as shall be within the Insured's possession or control for the purpose of enforcing such claim, demand, or cause of action; and
"The Insured covenants that no release or settlement of any such claim, demand, or cause of action has been made."
In the meantime, the appellee and the driver of the other automobile involved in the accident signed reciprocal releases. Appellee did not receive any sum of money for the release. After the Insurance Company received the proof of loss, and after the release had been given to the other driver, the Insurance Company issued its check payable to the Mississippi Motors Finance, Inc. and Roscoe Moore Pontiac Agency for the sum due for the repairs to appellee's automobile, less $50 deductible under the terms of the policy.
The Insurance Company filed suit against the driver of the other automobile, but dismissed the suit when it learned appellee had given a release to the other driver. It then sued appellee, but did not allege in its declaration, nor did it offer proof that the accident, in which the insured automobile was damaged, was caused, in whole or in part, by the other driver. The appellant, Insurance Company, chose to stand upon the charge that it had paid the cost of repairs to appellee's automobile due to the dealer and finance company; and that it would not have done so if the appellee had not "represented to it that he had executed no release of his claim, that this representation was false and known to the defendant to be false at the time it was made."
The testimony shows without dispute that appellee did not know the contents of the proof of loss signed by him, nor that the Insurance Company had paid for the cost of repairs to his damaged automobile, until he was sued by the Insurance Company. No evidence was introduced that appellee was guilty of any actual or willful fraud in signing the proof of loss, or in signing a release to the driver of the other automobile involved in the accident.
The issue here is whether or not an insurance company can recover money *893 paid for repairs of an automobile when it discovers that the insured had released the other driver involved in the accident, thereby releasing the insurance company's right of subrogation, without alleging and proving that the other driver caused or contributed to the cause of the accident in which the insured's automobile was damaged.
We hold that after the cost of the repairs to the damaged automobile has been paid by the Insurance Company in order for it to recover the money paid, it must allege and prove  not only a breach of the contract by the insured  but also that the Insurance Company was damaged by the release of its subrogation rights to sue, by showing that it could have recovered from the person to whom the release was given.
A general rule on this subject may be found in 29A Am.Jur. Insurance section 1720 at pages 799-80 (1960), wherein the textwriter points out:
"The insurer's right of subrogation against third persons causing the loss paid by the insurer to the insured does not rest upon any relation of contract or privity between the insurer and such third person, but arises out of the contract of insurance and is derived from the insured alone. Consequently, the insurer can take nothing by subrogation but the rights of the insured, and is subrogated to only such rights as the insured possesses. This principal has been frequently expressed in the form that the rights of the insurer against the wrongdoer cannot rise higher than the rights of insured against the latter, since the insurer as subrogee, in contemplation of the law, stands in the place of the insured and succeeds to whatever rights he may have in the matter. Therefore, any defense which a wrongdoer has against the insured is good against the insurer subrogated to the rights of the insured."
The textwriter in 46 C.J.S. Insurance § 1209 at pages 159-160 (1946) points out:
"Where the release is taken by the wrongdoer without knowledge that insurer was subrogated to insured's rights, insured is liable to insurer for the damages he has caused, but in order that insurer may recover from insured in such case it must show that in fact the wrong has been committed and the damages caused thereby, and in order to prove damage it must show that in fact it might have recovered against the third party as a wrongdoer."
It is pointed out in 7 Am.Jur.2d Automobile Insurance section 207 at pages 549-50 (1963) that:
"If the act of the insured in settling with or releasing a wrongdoer responsible for the loss constitutes a violation of the express contract between the insured and the insurer, represented by either the original policy or some collateral agreement, such a subrogation agreement, an assignment, or a loan receipt executed by the insured in connection with the payment of the policy claim, then the insurer is entitled to recover its damages, as in the case of any breach of contract. * * *
"* * * Thus, it has been said that an insurer cannot recover from the insured an amount which it had paid under a collision policy in the absence of any proof that the insured had an enforceable claim from damages against the third party to whom he gave a release in violation of the subrogation agreement since the insurer was subrogated only to whatever rights the insured might have been entitled to enforce against the third party."
The textwriter cites the case of Washington Fire & Marine Insurance Company v. Williamson, 233 Miss. 33, 100 So.2d 852 (1958).
In the case of Farmer v. Union Insurance Company of Indiana, 146 Miss. 600, 111 So. *894 584 (1927), the promise of the insurance company to pay Farmer for injury to his automobile was conditioned on its becoming thereby subrogated to his right of action for damages against the person who inflicted the injury thereto. This Court said:
"When he released the railroad company from liability for injury to the automobile, he destroyed the right of subrogation of the insurance company to his cause of action therefor, and thereby released it from liability on its promise to pay for injury to the automobile." 146 Miss. at 606, 111 So. at 586.
The Farmer case was approved in Chandler v. State Farm Mutual Automobile Insurance Company, 200 Miss. 702, 28 So.2d 571 (1947) where the insured's administratrix released the railroad from liability for damage to an automobile at the time she accepted payment for the death of insured. This release, in effect, destroyed the right of subrogation of the insurer under the conditions of the policy, and this Court said:
"Under these conditions we think the principles announced in the case of Farmer v. Union Ins. Co. of Indiana, 146 Miss. 600, 111 So. 584, was controlling against appellant. In that case insured automobile was struck by a train, causing its destruction by fire, and also causing personal injuries to Farmer, the owner and insured. While the suit was pending Farmer amended his declaration eliminating the claim for damage to the automobile and an agreed judgment was then rendered in his favor against the Railroad Company for personal injuries. * * *." 200 Miss. at 709, 28 So.2d at 573.
And this Court pointed out that when the administratrix released the railroad company from all liability in the judgment entered, it rendered the claim of the insurance company worthless against the railroad without the consent of the insured.
Washington Fire & Marine Insurance Company v. Williamson, 233 Miss. 33, 100 So.2d 852 (1958), is a case where the insurer brought an action against the insured to recover damages in an amount which insurer had paid insured under the automobile collision policy for damage to insured's automobile as the result of a collision with an automobile of a third party upon the ground that the insured had given a third party release in violation of the subrogation agreement. This Court said:
"* * * the claim is that the appellee wrongfully released Pressley from all claims for damages arising out of the collision, after he had executed an assignment and subrogation agreement to the insurance company. But there is no proof whatsoever in the record as to whether or not Williamson had an enforcible claim for damages against the witness Pressley, there being no proof as to whether the negligence of Pressley was either a contributing or the sole proximate cause of the collision. Of course the insurance company was subrogated only to whatever rights Williamson may have been entitled to enforce against the witness Pressley, and it was not shown as to whether he had an enforcible claim or not." 233 Miss. at 36, 100 So.2d at 853-854.
Later, in the case of the United States Fidelity & Guaranty Company v. Covert, 242 Miss. 1, 133 So.2d 403 (1961), this Court pointed out:
"Moreover, a right of action on a conventional subrogation against an insured who has released a wrongdoer for the money paid insured for damages is now generally accepted. 29A Am.Jur., Insurance, Sections 1719 and 1736; Cyclopedia of Insurance Law, Couch, Vol. 8, Sections 2001-2002." 242 Miss. at 8, 133 So.2d at 406.
In that case, however, we recognized the rule set out in Washington Fire & Marine *895 Insurance Company v. Williamson, 233 Miss. 33, 100 So.2d 852 (1958), and stated:
"It is true that the insurance company must have alleged and established by evidence that the damage done to property of the insured for which payment was made by the insurer was done either as a direct and proximate result of the wrongful acts of the tort-feasor, or that the tort-feasor contributed to such damage for which he would have been liable to insurer except for the fact that he had been released by the insured." 242 Miss. at 10, 133 So. at 407.
The answer in the Covert case, however, admitted the charge in the declaration that insured had an enforcible claim against the wrongdoer.
In view of the rule set out in the foregoing authorities, we are of the opinion, and so hold, that the judgment of the trial court should be, and is hereby affirmed.
Affirmed.
GILLESPIE, P.J., and BRADY, INZER and SMITH, JJ., concur.