367 So.2d 914 (1979)
UNITED STATES FIDELITY & GUARANTY COMPANY
v.
Frances HILLMAN.
No. 50754.
Supreme Court of Mississippi.
February 14, 1979.
T. Kenneth Watts, Meridian, for appellant.
Charles C. Pearce, Union, for appellee.
Before SMITH, WALKER and BROOM, JJ.
SMITH, Presiding Justice, for the Court:
Frances Hillman recovered a judgment for $10,000 against United States Fidelity & *915 Guaranty Company under the uninsured motorist provisions of an automobile liability insurance policy issued to her by that company.
In her suit, Hillman alleged that she had sustained injuries in an automobile accident which occurred on April 11, 1973, when her automobile and the truck of one Clark collided at an intersection. Clark was an uninsured motorist.
Photographs indicate that the left front fender of Hillman's automobile struck the right side of the cab of Clark's truck and show a crumpling of the left front fender of the Hillman automobile and some damage to its left front door. The damage to the truck was to the right front door of the cab.
The United States Fidelity & Guaranty Company has appealed from the judgment entered against it, assigning several alleged errors for reversal. While several of the assignments appear to have merit, in view of the conclusion we have reached it is necessary to notice only one. Hillman was precluded from recovery under the express terms of the policy and under Mississippi Code Annotated section 83-11-107 (1972), granting the right of subrogation to an insurer against an uninsured motorist for any amount which it may be called upon to pay, Hillman having executed a release of the uninsured motorist, without the knowledge or consent of the insurer.
Following the collision, according to Clark, the uninsured motorist, he and Hillman remained at the scene for about an hour and each told the other that he was not hurt. This is supported by another witness who had come to the scene. Hillman obtained an estimate of the cost of repairs to the automobile and, next day, in a conversation with Clark, she again told him she was not hurt. He asked her if she would give him a release if he paid her the amount shown by the estimate and she, again according to Clark, said "Hell yes, I'm not hurt." Clark then went to his lawyer and had a release prepared. On April 13, he met with Hillman and her son, both of whom read the release, and Hillman was given a copy and Clark's check. Hillman executed the release which was duly witnessed by one Gainey.
The release executed by Hillman was as follows:
RELEASE
KNOW ALL MEN BY THESE PRESENTS:
That I/We Frances Hillman for the sole consideration of One Hundred Forty Two and 38/100 ($142.38) dollars, to me in hand paid by L.C. Clark, PAYER, the receipt whereof is hereby acknowledged, have released and discharged, and by these presents do for myself/ourselves/my/our heirs executors, administrators, and assigns release and forever discharge the said Payer and all other persons, firms, and corporations, both known and unknown, of and from any and all claims, demands, damages, actions, causes of action, or suits at law or in equity, of whatsoever kind or nature, for or because of any matter or thing done, omitted or suffered to be done by anyone prior to and including the date hereof on account of all injuries both to person or property resulting, or to result, from an accident which occurred on or about the 11th day of April, 1973, at or near Union, Mississippi, being 7 1/2 miles West of Union, Miss., on Highway 492.
I/We understand said Payer, by reason of agreeing to this compromise payment, neither admits nor denies liability of any sort, and said Payer has made no agreement or promise to do or omit to do any act or thing not herein set forth and I/We further understand that this release is made as a compromise to avoid expense and to terminate all controversy and/or claims for injuries or damages of whatsoever nature, known or unknown, including future developments thereof, in any way growing out of or connected with said accident.
I/We admit that no representation of fact or opinion has been made by the said Payer or anyone on her, his, or their behalf to induce this compromise with *916 respect to the extent, nature or permanency of said injuries or as to the likelihood of future complications or recovery therefrom and that the sum paid is solely by way of compromise of a disputed claim, and that in determining said sum there has been taken into consideration the fact that serious or unexpected consequences might result from the present injuries, known or unknown, from said accident, and it is therefore specifically agreed that this release shall be a complete bar to all claims or suits for injuries or damages of whatsoever nature resulting or to result from said accident.
IN WITNESS WHEREOF I/We have hereunto set my/our hand this 12th day of April, 1973.
In the presence of
S/ Malcolm Gainey S/ Frances Hillman
Malcolm Gainey Frances Hillman
 Address Route Box 484
 Conehatta, Miss. 37057
Hillman does not recall whether she told Clark that she was not hurt. She testified that she and her son met with Clark, that he gave her a copy of the release, both she and her son read it and that she executed it. She accepted Clark's check, retained a copy of the release and two days later endorsed and cashed the check. She was allowed to testify that she thought she was releasing only the property claim.
Hillman testified that her insurer United States Fidelity & Guaranty Company was not informed of the accident, was given no notice of the settlement of the claim against Clark, the uninsured motorist, and knew nothing about any of these matters. Three weeks after the accident, Hillman's attorney gave United States Fidelity & Guaranty Company the first notice that it had of the accident and propounded a claim against it under the uninsured motorist's provision of the policy for injuries allegedly sustained by Hillman.
Clark is not a party to the suit. There is no allegation of facts which would render the receipt void. In fact, the defendant pled the release in its notice of affirmative matter in bar of recovery and plaintiff made no response thereto and failed to file any statement, written or otherwise, "of any special matter... in denial or avoidance" of the release, as required by Mississippi Code Annotated section 11-7-59 (1972). The execution of the release by plaintiff, duly witnessed, a receipt of the copy thereof and endorsement and cashing of Clark's check, are undenied and undeniable facts. Mississippi Code Annotated section 83-11-107 (1972) contains the following provision:
§ 83-11-107 Subrogation.
An insurer paying a claim under the endorsement or provisions required by section 83-11-101 shall be subrogated to the rights of the insured to whom such claim was paid against the person causing such injury, death, or damage to the extent that payment was made, including the proceeds recoverable from the assets of the insolvent insurer... .
In the Uninsured Motorist section of the policy issued to Hillman by United States Fidelity & Guaranty Company, under "Exclusions", appears the following:
This policy does not apply under Part IV [Uninsured Motorists Section]
.....
(b) to bodily injury to an Insured with respect to which such insured, his legal representative or any person entitled to payment under this coverage shall, without written consent of the Company, make any settlement with any person or organization who may be legally liable therefor.
It is clear that Harthcock v. State Farm Mutual Automobile Insurance Co., et al., 248 So.2d 456 (Miss. 1971), upon which appellee seeks to rely, did not involve settlement with an uninsured motorist. The Court, in its opinion, was careful to exclude from the scope of its decision in Harthcock cases involving settlement with an uninsured motorist. The court distinguished between the settlement of an insured with an insured motorist, as was involved in Harthcock, and settlement with an uninsured motorist. The Court made clear that settlement with *917 an insured motorist did not impair any substantial right of the insurer. The case did not involve a settlement with an uninsured motorist, which would have had the effect of cutting off the insurer's right of statutory subrogation.
Appellee's reliance upon Harthcock v. State Farm Mutual Automobile Insurance Co., et al., 248 So.2d 456 (Miss. 1971) is misplaced. In Harthcock, this Court dealt with uninsured motorist provisions in certain motor vehicle liability policies where claimant had settled with an insured tort-feasor without consent of the insurer in violation of policy provisions.
In Harthcock, Mrs. Harthcock had sustained injuries when a motorcycle belonging to Lonzo Horne, being operated by James Horne, on which she was riding as a passenger, collided with an automobile of one Roark. The Roark vehicle was covered by a policy of liability insurance issued by Southern Farm Bureau Insurance Company. Mrs. Harthcock's husband was the insured in a policy of automobile liability insurance issued to him by State Farm and the Horne motorcycle was covered by a policy issued to Lonzo Horne by Universal Underwriters Insurance Company. This latter policy, however, contained provisions which the Court held afforded no protection to Mrs. Harthcock because "riders" were excluded and, therefore, the Court held that the motorcycle was an uninsured motor vehicle within the meaning of the Mississippi Uninsured Motor Vehicle Act. In this situation, Mrs. Harthcock settled with Roark, the insured motorist. Mrs. Harthcock sued State Farm and Universal under the uninsured motorist provision of their respective policies. The issue now under consideration was not before the Court in that case, as an examination of the Court's opinion clearly shows. In Harthcock, this Court said, among other things:
Section 8285-54 Mississippi Code 1942 Annotated (Supp. 1968) is in part as follows:
An insurer paying a claim under the endorsement or provisions required by Section 1 [§ 8285-51] shall be subrogated to the rights of the insured to whom such claim was paid against the person causing such injury, death or damage, to the extent that payment was made; ...
[3] The "person causing such injury" within the meaning of this section is the uninsured motorist. The statute is not concerned with other joint tort-feasors.
And further:
Universal's policy contains the following exclusion with reference to the uninsured motorist coverage:
... to bodily injury to an insured with respect to which such insured, his legal representative or any person entitled to payment under this endorsement shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor.
[4] State Farm's policy contains a similar provision. Insofar as this exclusion applies to a tort-feasor other than the uninsured motorist, this provision is invalid... .
This exclusion, when applied to tort-feasors other than the uninsured motorist, is an invalid abridgement of the coverage required by the statute, and is void. (248 So.2d at 459-460).
In Alabama Farm Bureau Mutual Casualty Insurance Company v. Clem, 49 Ala.App. 457, 273 So.2d 218 (1973) cited by appellee, plaintiff, Mrs. Clem, riding as a passenger in the automobile of Mrs. Leonard, (insured by State Farm Fire & Casualty Company) was killed, as was Mrs. Leonard, when it collided with the automobile of one Hines, an uninsured motorist. A settlement of the claim for Mrs. Clem's wrongful death was effected with Leonard's estate and her insurer, State Farm, and the estate and insurer were released. Request was made of Alabama Farm Bureau Mutual Casualty Insurance Company, insurer of the automobile belonging to Mrs. Clem's surviving husband, for leave to sue Hines. Alabama Farm Bureau granted this permission but specifically denied liability under the uninsured motorist provision in its policy issued *918 to Clem. A judgment for $39,300 was obtained against Hines, the uninsured motorist, and suit to recover $10,000 of this amount was filed against Alabama Farm Bureau Mutual under the uninsured motorist provision of the Clem policy.
The decision of the Alabama Court of Civil Appeals, in allowing recovery, closely parallels that of this Court in Harthcock, supra.
The Alabama Court said:
The sole issue presented to this court is whether or not the exclusionary clause contained in the uninsured motorist coverage part of the policy is valid as to settlements with insured motorists by virtue of the insurance company's subrogation rights. Although other states have upheld such clauses based upon protection of the insurer's subrogation rights, we do not think that this is the case in Alabama.
In support of his argument, appellant cites us to Florida and Louisiana cases upholding such clauses. We must point out that the uninsured motorist statutes of both states include a liberal subrogation provision.

Alabama's statute, however, contains no such provision... .
.....
We therefore conclude that the exclusionary clause in question does not prevent a settlement with an insured tort-feasor under the circumstances of this case. The judgment of the trial court is therefore affirmed. (49 Ala.App. at 460-462, 273 So.2d at 221-222).
In Ford v. State Farm Mutual Automobile Insurance Company, 550 S.W.2d 663 (Tex. 1977), cited by appellee, Mrs. Ford, a passenger in the automobile of Mrs. Harvey, was killed when it collided with the automobile of one Whitten, an uninsured motorist, whose negligence caused the collision. Settlement of Mrs. Ford's death claim was made with Gulf Insurance Company, insurance carrier for Harvey. The Ford automobile was covered by a policy issued by State Farm Mutual, containing an uninsured motorist provision. There was no settlement with or release of Whitten, the uninsured motorist. The Supreme Court of Texas allowed recovery against State Farm under its uninsured motorist provision, but based the decision upon the ground that a waiver of the policy clause requiring consent of the company had occurred. The case does not involve the question now before this Court.
Gulf American Fire & Casualty Company v. McNeal, 115 Ga. App. 286, 154 S.E.2d 411 (1967), another case cited by appellee, and decided by the Court of Appeals of Georgia, involved the dispute with an insurance carrier as to whether the uninsured motorist provision of the policy issued originally covering a Volkswagen, belonging to McNeal, also covered an additional automobile afterward acquired by him, which was the automobile actually involved in the collision, in which Mrs. McNeal and her son sustained injuries. The Georgia law required, as a condition precedent to the suit against the insurer under an uninsured motorist provision, that suit be brought and recovery obtained against the known uninsured motorist. McNeal's insurer denied all coverage and took the position that its policy did not cover the car involved and refused to consent to suit against the uninsured tort-feasor. The Court held that this was a waiver of the consent provision and that under these circumstances the plaintiffs were entitled to sue without the insurer's consent.
Appellee also cites Hawaiian Insurance & Guaranty Company v. Mead, 14 Wash. App. 43, 538 P.2d 865 (1975), a case which involved a three-car collision in which Mead, the insured under a policy issued to him by Hawaiian Insurance & Guaranty Company, was injured. The other vehicles involved were operated respectively by Bilyeu's Meats, Inc., and one David Hunter, the latter having been an uninsured motorist. Settlement was made by Mead with Bilyeu, and Bilyeu was released. No settlement with Hunter the uninsured motorist, was made. Mead's insurer brought suit against Mead seeking a declaratory judgment that Mead's settlement with Bilyeu's, an insured motorist, without the company's consent, *919 prevented his recovery under the uninsured motorist provision of the policy. The Court held that it did not. The case did not touch the question now before this Court as to the effect of settlement with the uninsured motorist.
This Court, in disposing of the precise (but different) question involved in Harthcock, made a reference to the Georgia Uninsured Motorists statute saying "The Georgia statute with respect to the requirements of the undertaking of the insurer are identical with the statute in this state."
The Georgia Court, in Cotton States Mutual Insurance Company v. Torrance, 110 Ga. App. 4, 137 S.E.2d 551 (1964), Affirmed 220 Ga. 639, 140 S.E.2d 840 (1965), dealt with the question of the effect of a settlement by an insured with an uninsured tort-feasor in violation of the consent provisions of the policy. In Cotton States, the Georgia Court held that the insured's petition against the insurer under the uninsured motorist provision of the policy failed to state a cause of action since the petition affirmatively showed that the insured's rights under the policy had been forfeited in obtaining a judgment against the uninsured motorist in violation of a policy exclusion which provided that coverage would not apply where the insured made any settlement with, or prosecuted to judgment any action against, any person or organization who may be legally liable without the written consent of the insurer. The Court held that the insurer was entitled to contract to protect its rights against the uninsured motorist and to exclude from coverage cases where judgment was obtained or settlement made with the uninsured motorist without consent of the insurer.
Oren v. General Accident Fire And Life Assurance Corp., 175 So.2d 581 (Fla.App. 1965), was a case in which the administratrix of two persons killed when an automobile in which they were riding collided with the automobile of an uninsured motorist, had obtained judgments against the uninsured motorist without the consent of the insurer. The administratrix then brought suit against the insurer under the uninsured motorist provision of the insurance contract.
The policy contained the following provision under the Uninsured Motorists clause:
Exclusions
This policy does not apply ...
.....
(b) To bodily injury to an insured, or care or loss of services recoverable by an insured, with respect to which such insured, his legal representative or any person entitled to payment under this coverage shall, without written consent of the company, make any settlement with or prosecute to judgment any action against any person or organization who may be legally liable therefor; (Emphasis added). (175 So.2d at 582).
This provision is identical in its material particulars with that involved in the case now before this Court. In Oren the trial court entered judgment against the plaintiff in favor of the insurer and the administratrix appealed. In affirming the trial court, the appellate court stated:
The exclusion clause in the contract was specific, clear and unambiguous. It provided that the policy did not apply where the insured or his legal representative made a settlement or obtained a judgment against a person who might be liable, without the written consent of the insurer. It is clear that these terms were violated when suit was filed and judgment obtained without the written consent of the insurer. (175 So.2d at 582).
The appellate court cited Rigel v. National Casualty Company, 76 So.2d 285 (Fla. 1954), wherein the Florida Supreme Court had stated:
We acknowledge the rules that if the language is plain and unambiguous, there is no occasion for the Court to construe it, ... that if uncertainty is present, the instrument should be construed against the insurer, ... that the Court should not extend strictness in construction to the point of adding a meaning to language that is clear, ... and that the Court should construe the *920 contract of insurance to give effect to the intent of the parties... . (175 So.2d at 582).
The Appellate Court then continued:
The language herein is plain, unambiguous, and specific, and requires no construction or interpretation by this court. The pleadings do not allege any attempt made to obtain "written consent" or that the insurer refused to give "written consent" to the suit; and there are no allegations which would constitute waiver or estoppel on the part of the insurer. (175 So.2d at 582).
The Oren case is cited with approval in Valdes v. Prudence Mutual Casualty Co., 207 So.2d 312 (Fla.App. 1968), Bass v. Aetna Casualty And Surety Co., 199 So.2d 790 (Fla.App. 1967), Aetna Insurance Co. v. Jordan, 189 So.2d 408 (Fla.App. 1966).
Uninsured motorist insurance differs fundamentally from the liability coverage afforded by an automobile liability insurance policy. In the case of uninsured motorist insurance, under the statute, the insurer is subrogated to the rights of the insured against the uninsured tort-feasor. This is in keeping with time honored and long established principles.
In Thompson v. Aetna Insurance Co., 245 So.2d 206 (Miss. 1971), this Court said: "The law has long been established in the state of Mississippi that when there is in the insurance contract a subrogation right and the insured releases the person whose negligence is the proximate cause of any damage to the insurable interest and thereby the insurer is prohibited from proceeding against the tort-feasor, the insured has no further rights to proceed against the insurer."
In Thompson v. Aetna, supra, this Court said this:
The issue in this case is very limited and can be stated tersely as follows: Does the insured have the right to recover from the insurer the amount of the policy when the insured, without consent of the insurer and in violation of the terms and conditions of the policy, receives payment from a third party to whom a release has been given, thereby destroying the insurer's right of subrogation in violation of the terms and conditions of the policy? This issue is conclusively settled in the following cases: Twin States Insurance Company v. Bush, 183 So.2d 891 (Miss. 1966); Chandler v. State Farm Mutual Automobile Insurance Company, 200 Miss. 702, 28 So.2d 571 (1947); and Farmer v. Union Insurance Company of Indiana, 146 Miss. 600, 111 So. 584 (1927).
The law has long been established in the state of Mississippi that when there is in the insurance contract a subrogation right and the insured releases the person whose negligence is the proximate cause of any damage to the insurable interest and thereby the insurer is prohibited from proceeding against the tort-feasor, the insured has no further rights to proceed against the insurer. The insured, by executing the release in the case at bar, not only completely released the Alabama Great Southern Railroad Company, its agents, servants and employees together with all other subsidiaries of the Southern Railway System, but also released "any and all other persons, firms and corporations" from all damages resulting from the accident complained of to all property owned by the appellant. Thus the insurer was denied its contractual subrogation rights. The right to contract is precious and sacred to human endeavor, and a valid contract is binding on the parties thereto.
In Pearce v. Pierce, 214 Miss. 344, 58 So.2d 824 (1952), involving a general release pleaded as a settlement of all claims, it was contended that the release involved only property damage. The release read as follows:
Release In Full
For the Sole and Only Consideration of ... Three Hundred and No/100 ... Dollars ($300.00) to me, paid, receipt of which is hereby acknowledged I hereby release and discharge Pierce *921 Brothers and Ellis Pierce his or their heirs successors and assigns, and all other persons, firms or corporations who are or might be liable from all claims of any kind or character, which I have or may have against him or them, and especially because of all damages, losses or injury to persons or property, or both, whether known or unknown, developed or undeveloped, resulting or to result from accident on or about December 18, 1950, at or near Bunker Hill Community, Marion County, Mississippi and I hereby acknowledge full settlement and satisfaction of all claims of whatsoever kind or character which I may have against him or them by reason of the above mentioned damages, losses or injuries. I have represented that the injuries sustained are permanent and progressive and that recovery therefrom is uncertain and indefinite, and in making this release and upon my own judgment, belief and knowledge of the nature, extent and duration of said injuries and that no representations or statements regarding said injuries or regarding any other matter made by the persons, firms or corporations who are hereby released or any person or persons representing him or them or by any physician or surgeon by him or them employed has influenced me to any extent whatsoever in making this release.
It is further understood and agreed the payment of said amount is not to be construed as an admission of liability upon the part of said person, firms or corporations; liability being by me or them expressly denied.
All agreements and understandings between the parties hereto are embodied and expressed and the terms of this release are contractual and not a mere recital.
I Have Read The Foregoing Release And Fully Understand It.
Signed, sealed and delivered this 3rd day of January, 1951.
In the presence of
Alford Pearce (Claimant sign below)
Mrs. Mae Speights Hathorn Route No. Two C.R. Pearce (Seal) Bassfield, Miss.
This Court then continued:
We need not set out the testimony by which the appellant sought to show that there was a misunderstanding or fraud in its procurement, or that it was orally agreed that it covered only damage to his car. Appellant testified that before he signed it, he read it and knew its contents, also that he accepted and cashed a draft issued pursuant to the agreement in the sum of three hundred dollars, on which was written "Payment of all claims arising out of an accident. Date of accident, December 18, 1950." There is no issue whether this referred to the collision which is the basis for the suit herein.
While there are contentions alleging fraud, and representations at variance with the terms of the contract of release, fraud as to past or existing facts was neither alleged with conciseness nor proven with clear and convincing testimony, and, in view of a full understanding of the terms of the release, voluntarily executed, together with acceptance of the draft issued thereunder, the attack upon the release must fail. It merged all previous discussions and agreements, if any. See Koeing v. Calcote, 199 Miss. 435, 25 So.2d 763; Yazoo & M.V.R. Company v. Sideboard, 161 Miss. 4, 133 So. 669.
The cases may be classified generally as cases dealing with settlements with insured motorists, those dealing with cases in states where the insurer was not vested by statute with the right of subrogation, and those in states in which there are statutes vesting the insurer with the right of subrogation in cases involving uninsured motorists. The weight of authority appears to be that where the uninsured motorist statutes grant an insurer the right of subrogation, and a provision in the policy precludes settlement with an uninsured motorist without the consent of the insurer, the provision of the policy is valid and will be upheld.
*922 Clark did not concede liability, and he and Hillman differed as to the circumstances under which the collision occurred and as to fault in connection with it. Both Hillman and Clark agree that she was given the release, that both she and her son read it, that she retained a copy, and two days later cashed the check. In explaining why he wanted the release, Clark said that Hillman had "Gone back on her word one time and he was afraid that she might do so again." He considered that he was protecting himself against a suit for personal injury as well as property damage. He also said that this was explained to Hillman by her son, although this is not admitted. Clark testified that the settlement came about after an estimate of the damage to the Hillman car had been obtained and he asked Hillman if she would release him if he paid the amount of the estimate and that she had enthusiastically agreed. However the facts may be, the release was pled with the responsive pleadings as an affirmative defense and no written statement or any other response was made by plaintiff setting out "any special matter which he intends to give in evidence in denial or avoidance of such special matter so given in the answer by the defendant, and to which it would have been necessary heretofore to reply specially had the defendant's defense been specially pleaded; and if such special matter be not so alleged by the plaintiff, evidence of such matters shall not be given at the trial... ." Mississippi Code Annotated Section 11-7-59 (1972).
This statutory requirement was upheld in American Insurance Co. v. Prine, 244 Miss. 69, 140 So.2d 284 (1962).
Continued objections were made by appellant during the trial to testimony directed toward explaining or avoiding the settlement and release or varying its terms. In American Insurance Company, supra, this Court said that the admission of such evidence was error, citing Calvert Fire Insurance Co. v. Swain, 217 Miss. 773, 65 So.2d 253 (1953).
In any event, even if such testimony could be considered competent in what amounts to a collateral attack upon the release and where there was no pleading of anything in denial or avoidance of it, there was no testimony in the case capable of supporting a finding that the release is void.
It is undisputed that the insurer not only did not consent to, but had no part in the settlement between Hillman and Clark or in the execution of the release by Hillman and that the insurer knew nothing of either. It is also undisputed that the fact that Hillman had been involved in an accident was not reported to the insurer until three weeks after the accident had occurred.
The clear and unambiguous provisions of the insurance contract, the subrogation right vested in the insurer by statute, under principles announced and adhered to by this Court for many years, require that recovery against the insurer under the circumstances of this case be denied.
REVERSED AND JUDGMENT HERE FOR APPELLANT.
PATTERSON, C.J., ROBERTSON, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.