# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 93-CA-00876-SCT

*DEBRAH MURRIEL, GUARDIAN AND NATURAL MOTHER OF KIMBERLY MURRIEL, A MINOR*

*v.*

*ALFA INSURANCE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/30/93 |
| TRIAL JUDGE: | HON. ROBERT LEWIS GIBBS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JAMES W. NOBLES JR. |
| | JAMES E. WINFIELD |
| ATTORNEYS FOR APPELLEE: | ALAN C. GOODMAN |
| | AL NUZZO |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 2/6/97 |
| MOTION FOR REHEARING FILED: | 2/19/97 |
| MANDATE ISSUED: | 6/26/97 |

### BEFORE SULLIVAN, P.J., PITTMAN AND BANKS, JJ.

### PITTMAN, JUSTICE, FOR THE COURT:

¶1. Alfa Insurance Company was the Underinsured Motorist Bodily Injury Liability Insurance Carrier on an automobile liability policy issued to the father of Kimberly Murriel. Alfa sued Murriel in accordance with Rule 57 of the Mississippi Rules of Civil Procedure seeking to void the coverage for underinsured motorists benefits available to Kimberly, an infant who was injured in a collision resulting from the negligence of an underinsured motorist.

¶2. Kimberly's mother, Debrah, answered and subsequently, the lower court conducted a hearing on Alfa's Complaint for Declaratory Judgment. After hearing testimony from Wilson Hudson, the adjuster hired by Alfa to handle the claim, and after having received the claims file and reviewing it in camera, the court sustained Alfa's motion and granted its Complaint for Declaratory Judgment.

¶3. Alfa's policy required that the injured party insured under the policy for underinsured motorists benefits secure the permission of Alfa before settling the underlying claim. Dixie Insurance Company, the insurer for the owner and the driver of the vehicle causing the collision, interplead into court the limits of its policy. Debrah Murriel, on behalf of Kimberly, executed a release absolving the

responsible underinsured motorists from liability.

¶4. The attorney for Murriel had written Alfa and its outside adjuster requesting that they waive their subrogation rights. Alfa did not respond to the request, but denied coverage on the basis that Alfa's policy limits of $10,000 were offset by the $10,000 limits available to Murriel under the Dixie policy. The lower court held that by virtue of the fact that Debrah's claims were "settled" without the written consent of Alfa, coverage under Alfa's provision was voided.

¶5. Murriel appeals this decision on the ground that because of Alfa's failure to respond to their request for subrogation on the proposed settlement with Dixie, she was forced to appear and to submit to the claims in the interpleader action or face the waiver of those claims. Murriel filed a Motion to Supplement the Record in this case, which was passed for consideration on the merits by this Court. We grant the Motion, and reverse the lower court on the basis that Alfa cannot claim the consent defense after ignoring Murriel's request for subrogation.

¶6. In her Motion, Murriel seeks to supplement the record with exhibits[1] allegedly introduced into evidence and inadvertently omitted in the preparation of the appellate record. The motion before the Court is the second of its kind. Previously, we remanded this motion to the lower court to determine the matter of supplementation and for an order regarding said supplementation. On remand, the lower court determined that the exhibits were not inadvertently omitted, because the court reviewed the insurance file containing the letters after the hearing and determined that its contents should not be considered in ruling on the issue.

¶7. Murriel's Motion to Supplement the Record is granted. The exhibits in question were clearly admitted at the hearing as evidenced by the record notwithstanding the fact that the lower court "did not consider" the insurance file in ruling on the issue.

¶8. The issue for the Court is whether the policy issued to Willie Murriel bars coverage in the face of a settlement brought about by the interpleader action. The policy contained a provision requiring written consent from Alfa before the policyholder or a family member settled with any person or organization who may be liable for the bodily injury. Clearly, the intent of such a provision is to protect Alfa's statutorily created right of subrogation. *See* Miss. Code Ann. § 83-11-107 (1972).

¶9. Pursuant to Mississippi law, the relationship between an insurance company and its insured is controlled by the nature of the contract, and the respective duties of the parties are specifically stated by the provisions of the insurance policy. *Sessoms v. Allstate Ins. Co*., 634 So. 2d 516, 519 (Miss. 1993); *Cauthen v. Nat'l Bankers Life Ins. Co.*, 228 Miss. 411, 88 So. 2d 103, 104 (1956). Insurance policies which are unambiguous are to be enforced in agreement with the written terms. *Sessoms*, 634 So. 2d at 519. The written terms of the policy at hand contained a straight-forward provision denying uninsured coverage if the insured did not obtain written consent of Alfa. Further, this Court upheld the validity of written consent provisions in *United States Fidelity and Guaranty Co. v. Hillman*, 367 So. 2d 914 (Miss. 1979). We held in *Hillman* that "where the uninsured motorist statutes grant an insurer the right of subrogation and a provision in the policy precludes settlement with an uninsured motorist without the consent of the insurer, the provision of the policy is valid and will be upheld." *Id.* at 921. Thus, Alfa's argument is simple: the combination of Debrah's action of settling and Alfa's contractual contemplation of such actions by an insured specifically provides no coverage for the Debrah's claim.

¶10. **Hillman** is distinguishable. In that case, <u>no</u> notice whatsoever of the settlement or release was given to the insurer *Id.* at 922. The whole rationale behind *Hillman*'s validation of consent provisions was to protect the insurer's subrogation rights from being contracted away by the insured without the insurer having any say at all.

¶11. In the case at hand, the evidence indicates that Alfa had knowledge of the pendency of a claim against the third party. The March 2, 1990, letter of Murriel's attorney, acknowledged by Hudson, Alfa's independent adjuster, specifically states, "we are seeking a waiver of your subrogation rights prior to accepting the limits of the Stonewall policy." A letter written by Hudson from Mississippi Claims Service on July 6, 1990, confirming a telephone conversation of July 5, 1990, stated that the 1983 Delta 88 Oldsmobile was insured by Alfa for Willie Murriel with uninsured motorist limits of $10,000 per person, $20,000 per accident. Alfa then took the position as follows:

> As I informed you in our telephone conversation, the case of **State Farm Mutual Automobile Ins. Co. verses (sic) Susan T. Kuhling**, 475 So. 2d 1159, allows for an offset of the tort feasor's liability coverage. It is my understanding that the adverse liability carrier, Dixie Insurance Company, has already interpled their policy limits of $20,000. Therefore, this would preclude your clients from having an uninsured motorist claim.

Alfa had due notice with a specific request that its subrogation rights be waived on the underlying tortfeasor's coverage, which was the subject of the interpleader action shown on the face of the declaratory judgment filed by Alfa.

¶12. While the validity of written consent provisions is not in dispute here, we recognize the potential for misuse of these provisions evidenced today. Insurers cannot hold hostage coverage that an insured has paid for and is so entitled to receive. We hold that an insurer may waive any right to invoke the consent defense when the insurer does not respond within a reasonable time to an insured's request for consent. This serves not to undermine *Hillman* and the importance of protecting the insurer's subrogation rights but rather to place the benefit of the bargain between the insurer and the insured on the same footing.

¶13. We note that other jurisdictions have also held that action or inaction by an insurer may result in a waiver of the consent policy provision. In **Gay v. Preferred Risk Mutual Ins. Co.**, 314 A.2d 644 (N.H. 1974), the insured sought either coverage or permission to settle. The carrier denied coverage and thus stated it was not necessary for permission to be given. The insured settled and then sued the uninsured motorist carrier. The carrier claimed it did not waive its policy provision for written consent to settle based on the earlier correspondence. The *Gay* Court held, "we believe that the defendant's position is untenable. . . . The defendant's conduct expressed an intention to forego its defenses under the policy through its denial of all liability." *Id.* at 648.

¶14. The Supreme Court of Alabama in **Lambert v. State Farm**, 576 So. 2d 160, 168-69 (Ala. 1991), held that State Farm by its refusal to consent to the settlement or to timely advance the amount of the settlement offer effectively waived its subrogation rights and that the insured's acceptance of the settlement under the facts of this case did not affect their rights under the uninsured motorist insurance policy. In **Lambert**, the insureds informed State Farm of an offer by the tortfeasor's insurance company, but State Farm refused to give its consent and informed the Lamberts that if they

accepted it would void coverage under the uninsured motorist policy. The Lamberts accepted and then sued State Farm. The trial court granted summary judgment for State Farm on the ground that the Lamberts did not receive written consent. *Id*. at 162. In its decision to reverse, the ***Lambert*** court outlined six general rules in these type cases to protect the insured's rights to receive the "benefit of the bargain he has made" as well as the carrier's subrogation rights against the tortfeasor. ***See Lambert***, 576 So. 2d at 166-167.

¶15. Written consent provisions within a policy are certainly essential for the protection of the insurer's subrogation rights; however, it is equally important that an insurer give a reasonable response to a request for such consent. The judgment of the trial court is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

¶16. **REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., BANKS, McRAE, ROBERTS AND SMITH, JJ., CONCUR. MILLS, J., NOT PARTICIPATING.**

1. The exhibits in question are certain letters and correspondence from Attorney James E. Winfield to Alfa Insurance Company and Wilson Hudson, Alfa's claim representative. These letters were all part of Alfa's insurance file on Murriel.