852 So.2d 641 (2003)
Rebecca L. JACKSON and Gary Jackson, Appellants,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.
No. 2001-CA-01683-COA.
Court of Appeals of Mississippi.
February 11, 2003.
Rehearing Denied April 22, 2003.
*642 Lampton O. Williams, Poplarville, attorney for appellant.
Billy W. Hood, Jeffrey G. Pierce, Gulfport, attorneys for appellee.
Before SOUTHWICK, P.J., THOMAS and CHANDLER, JJ.
SOUTHWICK, P.J., for the court.
¶ 1. The plaintiff was injured in an automobile accident. It was not until five years after the event and two years after bringing suit against the other driver that the plaintiff gave notice to her own insurance company of a claim for under-insured motorist coverage. The circuit court granted summary judgment in favor of the insurance company, finding a statute of limitations bar and that the policy's requirement of timely notice had been violated. Though the circuit court considered the proper issues, we find disputes of material fact remaining. Consequently, we reverse and remand.

FACTS
¶ 2. On February 10, 1995, Rebecca L. Jackson was involved in a minor traffic accident with John Bordelon. Bordelon *643 struck the rear of Jackson's car while she was stationary at a stop sign. Bordelon, then eighteen years old, was driving a vehicle for which his mother was the named insured. Jackson's vehicle was insured with State Farm in her husband's name, Gary Jackson.
¶ 3. The Jackson car sustained very little damage, less than $200 to repair according to a professional estimate. However, three years prior to February 1995, Mrs. Jackson had been involved in another auto accident in which she sustained shoulder and arm injuries. There was evidence that these injuries had essentially resolved themselves but were aggravated by the accident with Bordelon. Jackson sought emergency care on the day of Bordelon's collision with her. She was diagnosed with a neck injury and referred to a private physician, Dr. Kerry Bernardo.
¶ 4. Dr. Bernardo diagnosed Jackson with a cervical strain or sprain. Over the course of the next three years, she sought treatment on several occasions from Dr. Bernardo for ongoing pain, including several courses of physical therapy. Rebecca and Gary Jackson filed suit against Bordelon and his mother on February 3, 1998, seeking compensation for the chronic injury to her neck and back. The complaint stated that the amount in controversy was more than $2,500, which meant that it exceeded the jurisdictional limit for justice court, but the pleading did not seek a specific amount of damages. Miss.Code Ann. § 9-11-9 (Rev.2002).
¶ 5. In November 1998, Dr. Bernardo expressed the written opinion that Mrs. Jackson had suffered an L4-L5 central disc herniation. Prior to this, she asserts that she understood her condition to be only a chronic strain or sprain.
¶ 6. In January 2000, the Jacksons for the first time notified their own insurer, State Farm, of the 1995 accident, of Mrs. Jackson's injuries, and of their intent to seek uninsured motorist benefits under their policy. State Farm took a sworn statement from Mrs. Jackson, in which she stated that the accident had not earlier been reported to State Farm because she was unaware of the serious and permanent nature of her injuries until November 1999. Once discovering the extent of her injuries, she alleges that she became aware that the limits on Bordelon's policy would be insufficient. This is what gave rise to her claim. State Farm denied the claim.
¶ 7. Following the denial, the Jacksons amended their circuit court complaint to include State Farm as a defendant. The claim was for breach of contract in refusing to pay the underinsured motorist benefits under the policy. The court granted summary judgment to State Farm and dismissed the claim with prejudice. The Jacksons appeal.

DISCUSSION
¶ 8. The suit was dismissed below because of multiple forms of delay by the plaintiffs. According to the circuit judge, the plaintiffs had failed to notify State Farm of the accident within a reasonable time. They then failed to notify State Farm of the litigation. Finally, the court found that the applicable statute of limitation for the claim had expired prior to the Jacksons' amending their complaint to join State Farm as a defendant.
¶ 9. These bases for judgment appear related, but the Jacksons' legal obligations for timely notice as opposed to timely litigation are controlled by different rules and precedents.

1. Timeliness of notice
¶ 10. State Farm contends that the Jacksons failed to give timely notice of the 1995 accident. Factually, it is agreed *644 that notice was not given to the Jacksons' own insurer, State Farm, until almost five years after the accident. The State Farm policy provides that the insured must give written notice of an accident or a loss "as soon as reasonably possible." Case precedent has enforced such an obligation but with qualifications that we will review.
¶ 11. The circuit court found as a matter of law that the Jacksons had not provided notice "as soon as reasonably possible." Without doubt, notice clauses confer valuable rights upon the insurer in its decision-making as to settlement or defense of a claim. Among the interests protected by a notice provision is the right of the insurer to investigate the events underlying the claim as soon after the occurrence as possible. 8 APPLEMAN, INSURANCE LAW & PRAC. § 4731 (Rev.2002).
¶ 12. In addition, notice protects the right of a company providing coverage for uninsured or underinsured motorists to seek reimbursement from the tortfeasor.[1] To enforce that right, the insurer is entitled to be subrogated to the rights of its injured insured. Miss.Code Ann. § 83-11-107 (Supp.2002). The subrogation rights by definition are derivative. Twin States Ins. Co. v. Bush, 183 So.2d 891, 893 (Miss. 1966). Therefore, the subrogation claim is "bound by the same statute of limitations, and in the same manner, as a claim by the plaintiff" against the tortfeasor would be. Coleman v. American Mfrs. Mut. Ins. Co., 930 F.Supp. 255, 261-262 (N.D.Miss.1996). That would primarily appear to be a consideration when the injured party has not brought timely suit against the tortfeasor, but the Jacksons here did not create that problem for their own insurer. Since State Farm would be seeking reimbursement for a judgment entered against the tortfeasor in the Jacksons' suit and assuming the rights of their insured to enforcement, there is not an obvious limitation issue applicable to State Farm's rights because of delay from the date of the accident itself.
¶ 13. We look at two sources for analyzing the timeliness of the notice. The policy issued by State Farm requires notice from the insured "as soon as reasonably possible" from the time of the accident or "loss." The "insured" in the present suit was not the injured party, Mrs. Jackson, but her husband. Mrs. Jackson's obligations arose under a different provision of the policy if she sought underinsured motorist coverage:
(1) "let us see the insured car the person occupied in the accident and any property damage," and
(2) "send us at once a copy of all suit papers if the person sues the party liable for the accident for damages."
¶ 14. Neither of these obligations was fulfilled. State Farm points to other reporting and procedural provisions in the policy, we but find no others significant to our decision.
¶ 15. Another source for an obligation to notify State Farm may arise from statute. The uninsured motorist statutes require that if the "named insured as defined in said policy" brings suit against an uninsured motorist, the insurance company should at the same time be served with the process for the suit. Miss.Code Ann. § 83-11-105 (Rev.1999). The Supreme Court has taken its usual approach in interpreting insurance issues and determined that such language should be read *645 strictly in favor of the insured: if it is not the "named insured" who is making the claim, the statute does not apply. Rampy v. State Farm Mut. Auto. Ins. Co., 278 So.2d 428, 433 (Miss.1973). The desirability and purpose of notice would be the same regardless of the party making the claim, but the Court gave the statute a literal reading. The legislature has never voided this interpretation by amending the statute. Obviously, Rampy is controlling. In the present case, the named insured and his wife both brought suit, and neither gave notice to State Farm.
¶ 16. Though the Jacksons failed to comply with the notice provisions under their policy, and Mr. Jackson failed to give the notice required once he joined in a suit, these omissions are not outcome determinative. The Supreme Court has held that where an insurance policy requires notice as a condition precedent to coverage, coverage may still be allowed unless the insurer suffered prejudice due to delay; that prejudice is a question of fact. Harris v. American Motorist Ins. Co., 240 Miss. 262, 126 So.2d 870, 873 (1961). A more recent precedent reached the same conclusion. "Because the questions of timely notice and prejudice were questions of fact for the jury to decide, the circuit judge erred in granting GEICO's motion for summary judgment." Lawler v. GEICO, 569 So.2d 1151, 1153 (Miss.1990).
¶ 17. State Farm argues that the existence of prejudice was clear from the undisputed facts and that therefore summary judgment was permissible on this issue. We need not determine whether prejudice is such a subjective standard as never to be the subject of summary judgment even when significant harm to an insurer is undisputed. It is enough to say this is not such a case.
¶ 18. We therefore conclude that insofar as the circuit judge granted summary judgment on the basis of the late notice, either under the policy or the uninsured motorist statutes, he erred. The question of prejudice remains a fact issue for consideration on remand.

2. Statute of limitations
¶ 19. The Jacksons' claim against the driver of the other vehicle is one in tort and arose at the time of the accident. The Jacksons' cause of action against State Farm is not in tort but in contract. Its date of accrual is disputed. What is agreed is that the general three year statute of limitations applies. Miss.Code Ann. § 15-1-49 (Rev.1995). The Jacksons argue that there is no cause of action until there is an alleged breach of contract, which did not occur until their claim for coverage of their claim was denied. State Farm would begin the cause of action with the accident itself.
¶ 20. The parties cite numerous precedents to guide us in our analysis. The precedent most helpful to the Jacksons holds that when there was litigation brought by the insured to determine whether the tortfeasor had insurance coverage, there was no accrual of the cause of action against the uninsured motorist carrier until a final decision on appeal that found that the tortfeasor had no coverage. Vaughn v. State Farm Mut. Auto. Ins. Co., 445 So.2d 224, 226 (Miss.1984). That is distinguishable, as State Farm readily does, because there was no question in the present case that the tortfeasor was insured, that the policy limit was in the $20,000-$25,000 range, and that if a claim for more than that was to be compensated through insurance, State Farm's policy was needed. The Jacksons respond that the serious nature of Mrs. Jackson's injuries was unknown until shortly before a claim was made against State Farm.
*646 ¶ 21. The most helpful decision for State Farm was handed down seven years after Vaughn. It could be seen as holding that the statute of limitation on a claim for uninsured motorist coverage arises on the date of the injury. Lawler, 569 So.2d at 1153. The issue in that case was whether the statute of limitation had run against a minor. The Court found that the injured child had the time in which to bring suit tolled during her minority. Once she became twenty-one years of age, the limitation period under the general six-year statute for contracts (now amended to three years) immediately began to run; the Court found that she had timely brought suit. Id. The statement of facts indicates that the claimant was injured by a motorist who had no insurance in 1979, that she became age twenty-one in 1982, and that she gave notice to her own insurance company of her claim in 1986. Id. at 1152. There was no discussion in the case of the Vaughn issue, namely, of when it became obvious that the uninsured motorist was in fact uninsured.
¶ 22. Despite the Lawler court's failure to discuss Vaughn or to state that the fact that the tortfeasor had no insurance was beyond dispute prior to the plaintiff's twenty-first birthday, we find neither omission especially noteworthy. We interpret the two decisions as being consistent. At least when there is reasonable uncertainty about whether the other party to an accident has adequate insurance, there is under this caselaw no accrual of a cause of action under a person's uninsured motorist policy.
¶ 23. We note that Lawler did not require that the absence of coverage be determined in litigation before a cause of action for uninsured coverage commences. To that extent, Lawler applies the clarification that what is necessary for the accrual of a cause of action is some level of assurance that there is not going to be insurance from the tortfeasor. A court judgment is not always needed.
¶ 24. A final point would be useful in our determinations. For statute of limitations purposes, a cause of action "accrues" once it exists as a legally enforceable claim, that is, when the right to sue has become vested in the plaintiff. Burgess v. Lucky, 674 So.2d 506, 509 (Miss. 1996).
¶ 25. We synthesize these precedents and apply them to our facts as follows. Once someone who possesses uninsured motorist coverage knows, or reasonably should know, that the damages he or she claims to have suffered exceed the limits of insurance available to the alleged tortfeasor, the cause of action against the uninsured motorist carrier has accrued. It is at this point in time the potential plaintiff has a legally enforceable claim against the uninsured motorist carrier. This conclusion is based on Lawler's clarification of Vaughn, which we apply by analogy to the situation that we face of insufficient primary insurance.
¶ 26. By statute and by insurance policy terms, notice of the claim must first be given the insurance company. Miss.Code Ann. § 83-9-5(e) (Rev.1999). No suit may be brought sooner than sixty days after written proof of loss has been given nor later than three years after the proof of loss. Miss.Code Ann. § 83-9-5(k)(Rev.2002). Therefore, if the Jacksons became, or should have become, aware of the shortfall in coverage under the tortfeasor's own policy more than three years before they joined State Farm in this litigation, their suit against State Farm fails. We do not have sufficient evidence on this summary judgment to state that the issue is beyond factual dispute.
*647 ¶ 27. One of the Jacksons' arguments on this point is that no cause of action accrues until there is an actual denial of a claim by State Farm. That creates the argument for a breach of contract, which then permits suit. The difficulty with finding that no cause of action accrues until there is a denial of the claim, is to leave in the hands of the claimant an unlimited period of time to wait, intentionally or inadvertently, before making a claim. Only thereafter would the statute of limitations commence. We do not accede to that one-sided interpretation. Instead, the limitations period is judged by the considerations that we have set out above.
¶ 28. It is a deceptively simple matter for an insured to include early notice to his or her own insurance company when bringing a claim against a tortfeasor. We humans, though, rarely think of everything and instead focus on what is necessary based on a set of assumptions. When knowledge changes those assumptions, sometimes only then are other notices given. As this Court interprets the caselaw and statutes, there is some protection for that shortsightedness. The law may encourage but it does not require what may prove to be unnecessary, i.e., giving notice to the party's own insurance company because the tortfeasor's policy has been found absent or inadequate.
¶ 29. Still, waiting until the last possible moment under the statute of limitations to notify an insurer such as State Farm is not in either the insured or the insurer's best interests. To state that the cause of action does not accrue until the time we have identified, does not in any manner delay the contractual or even the statutory obligation of notice. As we have pointed out, the concept of prejudice will determine whether a breach of the notice obligation will cause coverage to be lost. That prejudice may prevent coverage even if the statute of limitations does not.
¶ 30. We also point out that if the need for additional coverage remains uncertain and for that reason the uninsured motorist carrier is not notified, any determination on the amount of damages is not binding on the absent insurance company and must be relitigated. State Farm Fire & Cas. Co. v. Wightwick, 320 So.2d 373, 375 (Miss.1975). Thus there are at least inefficiencies and even inconsistencies of leaving issues such as we now face until the end of the primary litigation instead of addressing them at the beginning. Because of the problem of prejudice, there are also considerable hazards from delay.
¶ 31. Since we find disputed facts both on the issues of prejudice under the notice provisions and on the issue of when the knowledge of the shortfall in the tortfeasor's insurance became reasonably apparent, we reverse and remand.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF PEARL RIVER COUNTY DISMISSING THE SUIT AND GRANTING SUMMARY JUDGMENT TO THE APPELLEE IS REVERSED AND THE CAUSE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.
NOTES
[1] "Underinsured" refers to a shortfall in the tortfeasor's policy limits when compared to the damages, while "uninsured" would mean the absence of any other policy. We primarily use the word "uninsured" and its variations here, but thereby are referring to both concepts.