577 So.2d 1238 (1991)
ST. PAUL PROPERTY AND LIABILITY INSURANCE COMPANY
v.
George D. NANCE.
No. 90-CA-0023.
Supreme Court of Mississippi.
March 27, 1991.
*1239 David B. Strain, Bryant Colingo Williams & Clark, Gulfport, for appellant.
Mark W. Garriga, Bryan Nelson Allen Schroeder Cobb & Hood, Gulfport, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and McRAE, JJ.
ROBERTSON, Justice, for the Court:

I.
We consider today whether a plaintiff's release and discharge of the underinsured tortfeasor who caused her personal injuries operates as well to preclude a subsequent subrogation suit by her uninsured motorist (UM) carrier. The tortfeasor was "underinsured" in fact, but was "uninsured" in law.
The Circuit Court held that the UM carrier stepped into the shoes of its subrogor/insured and acquired no rights greater than she had and, that, because she had released the original tortfeasor, the UM carrier was barred as well. We affirm.

II.
On April 16, 1986, Rhonda Pierce and George D. Nance[1] met by accident. This chance meeting was largely the product of Nance's negligent driving in the course of which his automobile struck another which Pierce was driving at an intersection in Hancock County, Mississippi. Pierce suffered serious personal injuries, a fact no one seems to dispute.
At the time, both Nance and Pierce held contracts of automobile insurance. Nance was in the "good hands" of Allstate Insurance Company by reason of a liability insurance policy affording protection for only the first $10,000.00 of any damages Nance might cause by his negligence. Pierce was insured by St. Paul Property and Liability Insurance Company.[2] More particularly, St. Paul had undertaken to protect Pierce in the event of damages caused by the negligence of an uninsured motorist to the tune of some $100,000.00, a fact to which we will return.
A mere two days following her chance encounter with Nance, Pierce was in court. Her suit was a conventional personal injury tort action. Pierce demanded recovery of and from Nance the damages he had caused. Allstate retained counsel and defended Nance. Some eleven months later Allstate settled with Pierce, paying her $9,000.00, nine-tenths of its coverage limits. In consideration of this $9,000.00 settlement, Pierce dismissed her action against Nance and released Nance and Allstate from any further or other claims arising out of the April 16, 1986, accident.[3] Pierce *1240 made clear to one and all that her settlement with Nance and Allstate would leave her free to pursue St. Paul on the UM coverage it had written for her.[4] St. Paul was not aware of this settlement until much later.[5]
On April 15, 1987, Pierce filed a complaint in United States District Court for the Southern District of Mississippi, naming St. Paul as defendant and charging, once again, Nance's negligence and her personal injuries and asserting St. Paul's liability therefor as her UM carrier. On June 28, 1988, St. Paul made its peace with Pierce, paying her $26,000.00 in settlement of the suit, at the urging, we are told, of the United States Magistrate presiding over the proceedings.
Finally, we come to today's suit. Claiming that it was subrogated to Pierce's rights, St. Paul, on February 21, 1989, sued George D. Nance in the Circuit Court of Harrison County, Mississippi. St. Paul demanded judgment for the $26,000.00 it had paid Pierce to settle her UM claim.
Nance answered and pled accord and satisfaction, compromise and settlement, payment and release. Rule 8(c), Miss.R.Civ.P. Nance grounded these affirmative defenses in the terms of the March 6, 1987, release Pierce gave him which, by its terms, discharged him from any other or further liabilities arising out of the April 16, 1986, accident. Nance charged further that St. Paul, as Pierce's subrogee, stood in Pierce's shoes and was subject to any defenses he had against Pierce.
The matter came before the Circuit Court on cross-motions for summary judgment and stipulated facts. On December 8, 1989, the Court credited Nance's defense and granted judgment in his favor, finally dismissing St. Paul's complaint.
St. Paul now appeals to this Court.

III.
The law of subrogation is of ancient and equitable origins. Sadler v. Glenn, 190 Miss. 112, 118, 199 So. 305, 307 (1940); Box v. Early, 181 Miss. 19, 34, 178 So. 793, 796 (1938); Robinson v. Sullivan, 102 Miss. 581, 597, 59 So. 846, 847 (1912). Its contours are well settled, although it is today claimed in contexts increasingly statutory or contractual.
In Indiana Lumbermens Mutual Insurance Company v. Curtis Mathes Manufacturing Company, 456 So.2d 750 (Miss. 1984), this Court repeated the familiar definition:
Subrogation is the substitution of one person in place of another, whether as a creditor or as the possessor of any rightful claim, so that he who is substituted *1241 succeeds to the rights of the other in relation to the debt or claim, and to its rights, remedies, or securities.
Curtis Mathes, 456 So.2d at 754. The subrogee steps into the shoes of the subrogor. Murray v. Payne, 437 So.2d 47, 52 (Miss. 1983).
Here, St. Paul steps into the shoes of Rhonda Pierce, and when it does, it encounters considerable difficulty, for St. Paul, as subrogee,
... obtains no greater right in the thing assigned than was possessed by the assignor, but simply stands in the shoes of the latter and the assignee's right can rise no higher than assignor's.
Curtis Mathes, 456 So.2d at 754. In that case, the assignor/subrogor's claim was time-barred. The Court held that the assignor/subrogee was, as well, subject to the debtor's limitations defense.
We have affirmed these general principles in a variety of (other) insurance contexts. Thompson v. Aetna Insurance Company, 245 So.2d 206 (Miss. 1971), illustrates the point. Aetna had written property damage coverage for its insured. A tortfeasor damaged the insured's property, and the insured pursued a claim against the tortfeasor and ultimately settled, releasing the tortfeasor in language much like that used by Pierce in releasing Nance. The insured also claimed against Aetna, who, in turn, claimed to be a subrogee and pursued the tortfeasor. Denying Aetna's claim, the Court said:
When there is in the insurance contract a subrogation right and the insured releases the person whose negligence is the proximate cause of any damage to the insurable interest and thereby the insurer is prohibited from proceeding against the tortfeasor, the insured has no further rights to proceed against the insurer.
Thompson, 245 So.2d at 207 [emphasis supplied].
St. Paul concedes these general principles but argues that they are limited to subrogation rights arising ex contractu or from other non-statutory sources. St. Paul repeatedly emphasizes its view that the Circuit Court's decision
... overlooks the statutory nature of the subrogation right which St. Paul obtained when it was required to pay under its underinsured motorists policy. (Reply Brief for Appellant, p. 1)
The point is off the mark and of little moment.
Miss. Code Ann. § 83-11-107 (1972) does indeed say:
SUBROGATION. An insurer paying a claim under the endorsement or provisions required by 83-11-101 shall be subrogated to the rights of the insured to whom such claim was paid against the person causing such injury, death or damage to the extent that payment was made, including the proceeds recoverable from the assets of the insolvent insurer... .
Without question, the Legislature could have written this statute to provide that the subrogation rights a UM carrier acquired upon payment of a UM claim be exempt from defenses, but the question is whether it did. This is the question St. Paul's brief begs.
Mississippi Code Ann. § 83-11-101 (1972) requires that all policies of insurance issued in this state contain uninsured motorist coverage and provides that the rights conferred in the Mississippi UM Statute shall be deemed a part of the insurance contract, whether written therein or not. Lawler v. Gov't Employees Ins. Co., 569 So.2d 1151, 1153 (Miss. 1990); United States Fidelity & Guar. Co. v. Gough, 289 So.2d 925, 926-27 (Miss. 1974). Section 83-11-101 requires, in the context of today's case, that the subrogation clause in issue reads St. Paul "shall be subrogated to the rights of ... [Rhonda Pierce]." Our search is for the content of the rights Rhonda Pierce held and St. Paul acquired, not their nature or origin. When the Legislature uses the term "subrogated," we take that term as it has otherwise been consistently defined in this state's law. Nothing in the statute provides for an enlargement of Pierce's rights.
*1242 The legal effect of the statutory nature of St. Paul's subrogation rights is modest. The statute confers legal validity upon those rights. It renders those rights enforceable. To be sure, those rights may be enlarged by contract, but they may not be diminished. See Wickline v. United States Fidelity & Guar. Co., 530 So.2d 708, 712 (Miss. 1988); Mississippi Farm Bureau Mut. Ins. Co. v. Garrett, 487 So.2d 1320, 1323 (Miss. 1986). What is important is that nothing in the statute gives content to those rights beyond the language there used. And that language is merely the general proviso that St. Paul shall be subrogated to the rights of Rhonda Pierce to the extent St. Paul has paid Pierce. There being no provision in the statute which enlarges St. Paul's rights beyond conventional subrogation rights, and there being no language in the contract which enlarges St. Paul's subrogation rights, it follows that St. Paul's present suit fails and that the Circuit Court was correct when it entered judgment for Nance. This general view has been correctly accepted in two recent federal court decisions in this state. See Smith v. Safeco Ins. Co. of America, 704 F. Supp. 111, 114 (S.D.Miss. 1988); Shepard v. State Farm Mut. Auto. Ins. Co., 607 F. Supp. 75, 76 (S.D.Miss. 1985).
St. Paul says Nance is an underinsured motorist, not an uninsured motorist, and that this fact yields relief. What has become conventionally known as underinsured motorist coverage first appeared in this state via the 1980 amendments to the Uninsured Motorist Act. See Miss. Code Ann. § 83-11-103(c)(iii) (Supp. 1990). What is important to recognize is that this amendment re-defined the term "uninsured motor vehicle" to include:
... an insured motor vehicle, when the liability insurer of such vehicle has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist coverage.
Miss. Code Ann. § 83-11-103(c)(iii) (Supp. 1989). The term "underinsured" is never used in the statute. The statute provides that George Nance was driving an "uninsured motor vehicle" at the time he tortiously collided with and injured Rhonda Pierce. His status is a function of law, not fact. See Stewart v. Davis, 571 So.2d 926, 929 (Miss. 1990); Hicks v. Thomas, 516 So.2d 1344, 1347 (Miss. 1987). He is an uninsured motorist for subrogation purposes under our Uninsured Motorist Act.
St. Paul relies heavily upon United States Fidelity & Guaranty Company v. Hillman, 367 So.2d 914 (Miss. 1979), but finds no succor there, and for like reason. In that case, the insured [here Pierce] settled with the tortfeasor/uninsured motorist [here Nance] without the knowledge or consent of the insurer [here St. Paul]. The settlement was for some $142.38, apparently the property damage the insured perceived that she had sustained. She gave a release acquitting the uninsured motorist for all liabilities arising from the accident. The Court held this a breach of the insured's contract with its UM carrier, precluding recovery on the UM contract. St. Paul could have asserted a similar breach of contract defense when Pierce sued it earlier, but chose not to do so. In Hillman, the Court denied the insured's recovery under the UM contract by reason of her breach of that contract. Hillman, 367 So.2d at 922.
St. Paul's real resort to Hillman is to that opinion's characterization of this Court's earlier decision in Harthcock v. State Farm Mut. Auto. Ins. Co., 248 So.2d 456 (Miss. 1971). In Hillman, this Court expressed its understanding that:
[A] settlement with an uninsured motorist [Nance] . .. would have had the effect of cutting off the insurer's [St. Paul] right of statutory subrogation.
Hillman, 367 So.2d at 917. Indeed, it would have, for all of the reasons asserted by the Circuit Court and articulated above.[6]
AFFIRMED.
*1243 ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN and BANKS, JJ., concur.
McRAE, J., not participating.
NOTES
[1] Nance was the Defendant below and is the Appellee here.
[2] St. Paul was the Plaintiff below and is the Appellant here.
[3] The release provided, in pertinent part:

FULL AND FINAL RELEASE
FOR AND IN CONSIDERATION of the sum of NINE THOUSAND and 00/100 DOLLARS ($9,000.00), being paid by ALLSTATE INSURANCE COMPANY on behalf of GEORGE NANCE, the undersigned, RHONDA PIERCE, does hereby forever release, acquit, discharge, and covenant to defend and hold harmless GEORGE NANCE and ALLSTATE INSURANCE COMPANY, as well as their agents, representatives, successors, heirs and assigns, (hereinafter referred to as "Releasees") from any and all claims arising out of any injuries sustained by RHONDA PIERCE as a result of an accident which occurred on or about April 16, 1986. This Release specifically excludes any claims made or that will be made against the underinsured motorist carrier (St. Paul Insurance) by Rhonda Pierce.
The above settlement shall operate as and shall be a complete accord and satisfaction and is a full acquittance in consideration of a full and complete settlement of claims for damages and injuries of every kind, character or description sustained by me against NANCE, excluding St. Paul Insurance, whether herein specifically described or not which I may now or hereafter have on account of or in any way connected with the above described accident... .
[4] See Miss. Code Ann. § 83-11-103(c)(iii) (Supp. 1990); Thiac v. State Farm Mut. Auto. Ins. Co., 569 So.2d 1217, 1219 (Miss. 1990) (explaining concept of "underinsured" motorist insurance and computation of coverage); Cossitt v. Federated Guar. Mut. Ins. Co., 541 So.2d 436, 439-43 (Miss. 1989) (same); Phillips, Underinsured Motorist Coverage in Mississippi, 3 Miss.L.Rev. 65, 83-86 (1982) (same).
[5] The policy St. Paul had issued to Pierce contained this language:

You must do everything you can to preserve your rights of recovery. These rights will belong to us up to the amount we pay for a loss, so don't sign any release without our permission.
[6] To understand Hillman and its application today, remember that Nance was in law an "uninsured" motorist, although he was covered by the Allstate policy that left him "underinsured" in fact. In Phillips, Underinsured Motorist Coverage in Mississippi, 3 Miss.L.Rev. 65, 95 (1982), the author recognizes our reading of Hillman.