# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CT-01365-SCT

*DIMPLE G. WHITAKER AND CLYDE WHITAKER*

*v.*

**T & M FOODS, LTD. AND ROBERT Y. KENT**

### ON MOTION FOR REHEARING
### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 05/26/2006 |
| TRIAL JUDGE: | HON. PAUL S. FUNDERBURK |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JIM WAIDE |
| | D. KIRK THARP |
| | RICHARD SHANE McLAUGHLIN |
| | W. BRENT McBRIDE |
| ATTORNEYS FOR APPELLEES: | JAMES H. HEIDELBERG |
| | STEPHEN WALKER BURROW |
| | JESSICA MARIE DUPONT |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 04/16/2009 |
| MOTION FOR REHEARING FILED: | 10/20/2008 |
| MANDATE ISSUED: | |

EN BANC.

RANDOLPH, JUSTICE, FOR THE COURT:

¶1.     The motion for rehearing of T&M Foods, Ltd., and Robert Y. Kent is denied.   The

previous opinions of this Court are withdrawn and this opinion substituted therefor.

¶2.     Dimple and Clyde Whitaker appeal the Mississippi Court of Appeals' affirmance of

the Circuit Court of Lee County's dismissal of their case with prejudice.   The circuit court

granted T&M Foods' Rule 60(b) motion for relief from the circuit court's prior order denying

summary judgment to T&M Foods and Robert Y. Kent. Following dismissal of their case, the Whitakers appealed. The Court of Appeals affirmed. *See **Whitaker v. Kent**,* 2007 Miss. App. LEXIS 634, at *1 (Miss. Ct. App. Sept. 25, 2007). This Court granted the Whitakers' "Petition for Writ of Certiorari."

**FACTS**

¶3. In December of 1999, while working in the course and scope of his employment as a delivery driver for T&M Foods, a Steak-Out franchisee, Kent was involved in an automobile accident which injured Mrs. Whitaker. She initially incurred $891.95 in medical expenses. Approximately one week after the accident, a representative of Progressive Gulf Insurance, Kent's liability insurer, contacted the Whitakers regarding settlement. At the time, the Whitakers were concerned about the effect of the outstanding medical bills on their credit rating. Soon thereafter, the Progressive representative returned and informed them that Progressive "would not pay [Mrs. Whitaker's] medical bills unless she signed a Release." On January 20, 2000, the Whitakers signed a "Full Release of All Claims with Indemnity" providing that, in exchange for $1,391.95 from Progressive, the Whitakers would "release, acquit and forever discharge [Kent] and [Progressive] . . . and all other persons, firms, corporations . . . of and from any and all claims, actions, causes of actions . . . which the [Whitakers] now [have] or which may hereafter accrue on account of or in any way growing out of [the] accident . . . ."

¶4. Soon thereafter, Mrs. Whitaker was diagnosed with temporomandibular joint pain syndrome. Her physician identified the automobile accident as a contributing factor to the

condition.[1] On February 21, 2001, the Whitakers filed a complaint against Progressive, Kent, and Steak-Out Franchising, Inc., seeking a declaratory judgment invalidating the January 20, 2000, Release by alleging two theories. First, they alleged "mutual mistake," by asserting that "[t]he parties to the Release did not know of Dimple Whitaker's injuries until after the Release was executed." Second, the complaint alleged "negligent or intentional misrepresentation by the Progressive agent, who represented that the purpose of the payment of Five Hundred Dollars ($500.00) was only for . . . Whitaker's inconvenience. The real purpose was to keep Plaintiffs from receiving just compensation for any injuries that might develop from the accident."

¶5. On May 11, 2001, the Whitakers filed a "First Amended Complaint" against Progressive, Kent, and T&M Foods. The amended complaint added that "[n]otwithstanding the Release, [Progressive] and [Kent] and [T&M Foods] are jointly liable for [Whitaker's] injuries. Kent and [T&M Foods] are liable because of their negligence in causing the injuries. [Progressive] is jointly liable with Kent and [T&M Foods] because of their liability policy." The "Separate Answer and Defenses" of Kent and T&M Foods maintained that "[t]he full release of all claims with indemnity is a valid and enforceable contractual agreement between plaintiffs and defendants."

¶6. During the pendency of the litigation, Progressive and the Whitakers entered into a separate "Settlement Agreement and Release" on September 17, 2002. It noted that, in

---

[1]By June 22, 2004, Mrs. Whitaker claims she had incurred $113,865.37 in medical expenses, $1,427.33 in pharmacy expenses, and $15,313.57 in travel expenses related to the accident, for a total of $130,606.27.

3

obtaining the January 20, 2000, Release, "Progressive did not contemplate that [Kent] was in the course and scope of his employment with [T&M Foods,]"[2] and that "the earlier Release . . . is now null, void, cancelled and of no effect as between the undersigned." The signatories were Progressive and the Whitakers. Progressive paid an additional $8,608.05[3] to the Whitakers in consideration for the "release, discharge and [to] give up all claims and causes of action they have against *Progressive* arising out of the automobile accident." (Emphasis added). The Whitakers agreed:

> that in making any pursuit of their claim with respect to the automobile accident, *they will not seek execution against personal assets of [Kent]* and, instead, will seek to satisfy any judgment *only from assets of T&M Foods, and from any liability insurance carrier of [T&M Foods] applicable* to the accident . . . if any.

(Emphasis added).

¶7. T&M Foods, Kent's employer, was the "Named Insured" on a "Non-Owned Automobile Liability Insurance" policy with Evanston Insurance Company ("Evanston") covering a total of ten drivers. The Evanston policy covered food-delivery operations and defined "Auto" as "a *non[-]owned motor vehicle, while used to deliver food on behalf of the Named Insured(s)*." (Emphasis added). Regarding "Coverage and Limit of Liability," the policy declared "$1,000,000 combined single limit bodily injury and property damage each accident[,]" with a deductible of "[d]river's insurance or $1,000 deductible, whichever is

---

[2]The "Settlement Agreement and Release" added that "Progressive, at all relevant times, had in effect a liability policy issued for and on behalf of [Kent]. Progressive does not insure [T&M Foods] or its employees, when acting in the course and scope of employment for [T&M Foods]."

[3]This exhausted the Progressive policy's $10,000 limitation of liability.

4

greater." The policy defined "Insured" as "any person or organization qualifying as an insured in the WHO IS INSURED section . . . ." Regarding "WHO IS INSURED," the policy stated "[y]ou are insured for *any covered auto*." (Emphasis added). The policy also substantively provided: "[f]or any covered auto you don't own, the insurance provided by this policy is excess over any other collectible insurance" and "[w]e will pay all sums the insured legally must pay as damages because of *bodily injury* or property damage to which this insurance applies, *caused by an accident and resulting from the ownership, maintenance or use of a covered auto*, in excess of the retention amount stated in the declarations." (Emphasis added).

¶8. In the 2002 "Settlement Agreement and Release," the Whitakers "*expressly reserve[d] all rights* to proceed against *any party . . . except Progressive and except personal assets of [Kent]*." (Emphasis added). On October 31, 2002, the circuit court entered an order dismissing Progressive with prejudice, providing that "[t]his case shall continue as to the remaining defendants . . . ."

¶9. Kent and T&M Foods subsequently filed a "Motion for Summary Judgment," contending that the January 20, 2000, Release "extinguished the Plaintiffs' cause of action against [Kent] and [T&M Foods]." Alternatively, the motion maintained that, pursuant to the September 17, 2002, "Settlement Agreement and Release," Kent should be dismissed, as "there are no damages that will be recoverable by the Plaintiffs from [Kent]." On September 9, 2004, the circuit court denied the "Motion for Summary Judgment" of Kent and T&M Foods, except as to the personal assets of Kent, implicitly accepting the September 17, 2002, "Settlement Agreement and Release" as the operative instrument by citing language

5

therein. In addition, the circuit court granted the Whitakers' motion for default judgment against Kent "because of his failure to appear at his deposition . . . ."

¶10. On the day of trial, May 8, 2006, T&M Foods filed a "Rule 60(b) Motion for Relief from Judgment or Order," arguing that "[s]ince the [c]ourt's ruling on the Motion for Summary Judgment, case law, upon which Plaintiff's claims of vicarious liability as against [T&M Foods] must be based, has been overruled[,]" citing ***J&J Timber Company v. Broome***, 932 So. 2d 1 (Miss. 2006). T&M Foods argued that "[e]ither of the Releases . . . extinguished the Plaintiffs' cause of action against [Kent] and also therefore his employer, [T&M Foods]. [T&M Foods] thus should be relieved from the Court's Order of September [9], 2004 and this suit should be, as a matter of law, fully and finally dismissed." The Whitakers posited that the September 17, 2002, "Settlement Agreement and Release" was the operative instrument at issue, and that it clearly "preserve[d] all claims against T&M Foods and its employee, acting in the course and scope of his employment."

¶11. The circuit judge, relying upon ***J&J Timber,*** found "the *release* of Kent . . . under either release . . . bars all claims of vicarious liability by the plaintiff's [sic] against Kent's employer, [T&M Foods], despite any attempts by the plaintiffs to preserve those rights." (Emphasis added). The circuit court granted T&M Foods' "Rule 60(b) Motion for Relief from Judgment or Order," relieving them from the September 9, 2004, Order denying their "Motion for Summary Judgment," and adding that T&M Foods and *Kent*[4] "should be and are

---

[4]No motion for relief on behalf of Kent had been filed.

hereby entitled to Judgment as a matter of law." The circuit court rendered "Judgment" in favor of T&M Foods and *Kent*, dismissing both with prejudice.

¶12. Thereafter, the Whitakers filed a "Motion to Alter or Amend Judgment," a "Motion for Evidentiary Hearing," a "Motion to Disqualify Counsel from Representing Robert Y. Kent, Individually," and a "Motion for Leave to File Second Amended Complaint Based Upon Court's Sustaining Defendant's Motion to Dismiss." Each motion was denied by the circuit court. The Whitakers then timely filed a "Notice of Appeal."

¶13. The Court of Appeals affirmed the circuit court's dismissal of T&M Foods and Kent. *See **Whitaker***, 2007 Miss. App. LEXIS 634 at *1. The Court of Appeals, while recognizing that Kent's dismissal was improper, nonetheless found that:

> [b]ecause the trial court correctly applied ***J&J Timber*** to the case sub judice, and because the application of ***J&J Timber*** did not implicate the Contracts Clause of the Mississippi Constitution, this Court finds that the trial court did not err in granting T&M Foods's Rule 60(b) motion and dismissing the case. With regard to the trial court's decision to include Kent in the dismissal, the dismissal was proper as a matter of law although not properly done.[5] Finally, this Court finds that the trial court did not abuse its discretion in denying the Whitakers' motions filed after the trial court granted T&M Foods's Rule 60(b) motion.

*Id*. at *6-7. In concluding that the September 17, 2002, "Settlement Agreement and Release" acted to release Kent, and correspondingly, T&M Foods, under ***J&J Timber***, *see id*. at *15, the Court of Appeals made the following findings:

---

[5]*See* paragraph 20 *infra*. The Court of Appeals recognized the efficacy of the September 17, 2002, "Settlement Agreement and Release," under which only Progressive was released, having paid the limits of its liability policy and satisfied the deductible coverage of the Evanston policy.

the language of the fifth paragraph [of the "Settlement Agreement and Release"] clearly indicates that, for all intents and purposes, the Whitakers did not intend to pursue any claims against Kent personally. The language of the release clearly indicates that Kent is intended to remain in the litigation for the sole purpose of the Whitakers' pursuit of T&M Foods. Kent was covered only by the Progressive policy; therefore, the Whitakers could not collect damages from any other source in order to satisfy a judgment against Kent. Accordingly, the Court finds that the Whitakers effectively released Kent when they agreed not to execute on his personal assets *because there were no other damages to be recovered*.

. . .

[T]he Court's review of the [Evanston] policy at issue clearly establishes that T&M Foods is the only insured under the terms of the policy. Kent is in no way protected as an insured.

*Id*. at *13-15 (emphasis added). Following the Court of Appeals' denial of the Whitakers'

"Motion for Rehearing," this Court granted their "Petition for Writ of Certiorari."

**ISSUES**

¶14.    The parties present the following issues:

(1) Whether T&M Foods' insurance policy with Evanston covered Kent's automobile.
(2) Whether the trial court erroneously applied the Supreme Court's holding in *J&J Timber* as a bar to the Whitakers' vicarious liability claims against T&M Foods, since the company's negligent employee had not been released from liability.
(3) Whether the trial court erred in dismissing Kent, as the trial court already had entered a default judgment against Kent and Kent never requested dismissal of the Whitakers' claims against him.
(4) Whether the Court of Appeals erred in holding that a new decision which alters rights under a previously-existing contract is to be applied retroactively

8

so as to deprive the parties of the rights to which they were entitled prior to the issuance of the new decision.

## ANALYSIS

### I. Whether T&M Foods' insurance policy with Evanston covered Kent's automobile.

¶15.   The Court of Appeals found that under the Evanston policy, "Kent is in no way protected as an insured[;]" that "Kent was covered only by the Progressive policy;" and, therefore, "the Whitakers effectively released Kent when they agreed not to execute on his personal assets because there were *no other damages to be recovered*." *Whitaker*, 2007 Miss. App. LEXIS 634, at \*13-15 (emphasis added). The plain language of the September 17, 2002, "Settlement Agreement and Release" and the provisions of the Evanston policy contradict such a determination.

¶16.   T&M Foods was the "Named Insured" on the "Non-Owned Automobile Liability Insurance" policy with Evanston. The deductible on the policy was "*driver's insurance* or $1,000 deductible, whichever is greater." (Emphasis added). The policy defined "Auto" as "a non-owned motor vehicle, while used to deliver food on behalf of the Named Insured(s)." The policy defined "Insured" as "any person or organization qualifying as an insured in the WHO IS INSURED section[,]" and "WHO IS INSURED" expressly extends to T&M Foods "for any covered auto." Regarding coverage, the policy provided that "*for any covered auto you don't own*, the insurance provided by this policy is *excess over any other collectible insurance*" and Evanston "will pay all sums the insured legally must pay as damages because of *bodily injury* or property damage *to which this insurance applies*, *caused by an accident*

9

*and resulting from the . . . use of a covered auto*, in excess of the retention amount stated in the declarations." (Emphasis added). This Court has stated that:

> [p]ursuant to the application of the common law theory of respondeat superior, an employer is generally held to be vicariously "legally responsible" for its employees' negligent driving . . . . This principle will only have application when the vehicle is driven during the course of the employee's employment or within the scope of the permission given by the employer.

*Franklin County Mem'l Hosp. v. Miss. Farm Bureau Mut. Ins. Co.*, 975 So. 2d 872, 875 (Miss. 2008) (quoting 8 Lee Russ & Thomas Segalla, Couch on Insurance § 111:42 (2005)). Without question, the subject accident occurred when Kent was operating his personal motor vehicle in the course and scope of his employment as a food-delivery driver for T&M Foods. If the "language in an insurance contract is clear and unambiguous, then the court should construe it as written." *Jackson v. Daley*, 739 So. 2d 1031, 1041 (Miss. 1999) (citation omitted). The "clear and unambiguous" language of the Evanston policy provided coverage for Kent's automobile, as it was "a non-owned motor vehicle, . . . used to deliver food on behalf of the Named Insured." *See also Meyers v. Am. States Ins. Co.*, 914 So. 2d 669, 676 (Miss. 2005) ("May and Co.'s automobile insurance policy explicitly provides coverage for Meyers' vehicle on its designation page and also makes clear that coverage of Meyers' vehicle is part of the consideration for which May and Co. paid its insurance premium."). Moreover, "automobile liability coverage follows the vehicle, not the person . . . ." 12 Lee Russ & Thomas Segalla, Couch on Insurance § 169:109 (2005).[6] Accordingly, the Evanston

---

[6]*See also* 7A Lee Russ & Thomas Segalla, Couch on Insurance § 110:1 (2005) ("[t]o qualify as an 'insured' under a policy of automobile insurance, parties must either be the named insured or establish that they were a driver or occupant of a covered vehicle involved in an accident.").

10

policy provided coverage for "damages because of bodily injury . . . caused by an accident and resulting from the use of [Kent's] covered auto[.]" Kent's automobile was expressly covered under the four corners of the Evanston policy. In the event that the first release is set aside, this avenue of recovery for the Whitakers would not be foreclosed. The Court of Appeals erred in concluding that "there were no other damages to be recovered." *Whitaker*, 2007 Miss. App. LEXIS 634, at *13-15. The conclusion that the Whitakers effectively had released Kent in the September 17, 2002, Release, *see id*., is contradicted by the express terms of that instrument.

**II. Whether the trial court erroneously applied the Supreme Court's holding in *J&J Timber* as a bar to the Whitakers' vicarious liability claims against T&M Foods, since the company's negligent employee had not been released from liability.**

*First Release*

¶17.    Under the first release, the Whitakers released Kent from liability, absent proof to satisfy traditional principles for setting aside a release. "Every person must be presumed to know the law, and in [the] absence of some misrepresentation, or illegal concealment of facts, the person must abide the consequences of his contracts and actions." *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 754 (Miss. 2003) (quoting *Farragut v. Massey*, 612 So. 2d 325, 329 (Miss. 1992)). Thus, the Whitakers will have to provide sufficient evidence to support their claims of either mutual mistake, misrepresentation, concealment, or fraud to invalidate the first release. *See Warner v. Warner*, 175 Miss. 476, 479 (1936). Should the trial court be satisfied that the Whitakers have provided sufficient evidence to raise factual questions regarding mutual mistake or

11

"fraud, misrepresentation, adhesion or other inequities[,] then the case properly goes to the jury or fact finder." ***Royer Homes***, 857 So. 2d at 757.

*Second Release*

¶18. No analysis of the second release regarding Kent is required, should it be determined that Kent was released in 2000. The second release created no rights against Kent, a nonsignatory. The language of the September 17, 2002, "Settlement Agreement and Release" is clearly distinguishable from the release considered in ***J&J Timber***. The ***J&J Timber*** instrument provided that "[a]s part of a settlement the plaintiffs *released* the *driver* of the log truck from *all* liability *and agreed to indemnify him against third-party claims*." ***J&J Timber***, 932 So. 2d at 2 (emphasis added). Specifically, the "Receipt, Release and Indemnity Agreement" identified the *driver* among the "*released* parties" and provided "[[t]he wrongful death beneficiaries] . . . do hereby *release, acquit and forever discharge*, all of the said *released* parties, collectively and individually, from any and all actions and/or causes of action . . . [resulting] from injuries and/or damages we received . . . [in the incident] . . . ." *Id*. (emphasis added). Accordingly, the import of ***J&J Timber*** was "whether, as a matter of law, the *release of a tortfeasor* also serves as a *release of the tortfeasor's employer from claims of vicarious liability*, despite an attempt by the releasor to preserve the right to pursue such claims." *Id*. at 3 (emphasis added). This Court concluded that "the *release* of a negligent employee, in any capacity, bars all claims of vicarious liability against the employer, despite a reservation of rights." *Id*. at 8 (emphasis added).

¶19. By contrast, the September 17, 2002, "Settlement Agreement and Release" released only one specific party to the litigation, Progressive. It did not release the driver or the

12

driver's employer. Regarding Kent, the Whitakers agreed only "that in making any pursuit of their claim with respect to the automobile accident, [the Whitakers] will not seek execution against personal assets of [Kent] . . . ." Kent, the employee, was not released, but rather was the beneficiary of an agreement not to levy a presumed judgment against his personal assets. *See also **Burt v. Duckworth***, 206 So. 2d 850, 853 (Miss. 1968) ("it appears that Mrs. Burt did not execute a release to Campbell and International Paper Company although she did enter into an agreement not to sue them, retaining any rights that she had against the other parties involved.").

**III. Whether the trial court erred in dismissing Kent, as the trial court already had entered a default judgment against Kent and Kent never requested dismissal of the Whitakers' claims against him.**

¶20. While the Court of Appeals correctly recognized that the trial court erred in dismissing Kent, it affirmed the dismissal of Kent for other reasons. According to the Court of Appeals:

> [i]n this case . . . even if the Court were to reverse the portion of the order on the Rule 60(b) motion dismissing Kent on the grounds that the trial court improperly granted relief to Kent, such a ruling would be pointless. The trial court apparently granted the relief to Kent in recognition of the fact that the default judgment was void *ab initio* in light of the **J&J Timber** case. As a matter of law, the date that the Whitakers entered into the release with Progressive was the date that Kent effectively was dismissed from the litigation with prejudice and the date that T&M Foods became entitled to summary judgment as a matter of law. The Whitakers entered into that release with Progressive on **September 17, 2002.** The default judgment was not entered until May 26, 2006.

*Whitaker*, 2007 Miss. App. LEXIS 634, at \*17 (emphasis added). This Court's resolution of the other issues raised herein requires reversal of the trial court's ruling.

13

**IV. Whether the Court of Appeals erred in holding that a new decision which alters rights under a previously-existing contract is to be applied retroactively so as to deprive the parties of the rights to which they were entitled prior to the issuance of the new decision.**

¶21. This question of law is reviewed de novo. *See **Stephens v. Equitable Life Assurance Soc'y***, 850 So. 2d 78, 82 (Miss. 2003); ***Geter v. Gardner***, 702 So. 2d 118, 118 (Miss. 1997).

¶22. T&M Foods presented ***J&J Timber*** to the trial court on the day of trial, May 8, 2006, four days after the decision was handed down by this Court. The Court of Appeals deemed the retroactive application of ***J&J Timber*** permissible, finding the Contracts Clause of the Mississippi Constitution of 1890 (*see* Mississippi Constitution, article 3, Section 16), inapplicable. Specifically, the Court of Appeals held:

> in order for a party to invoke this provision of the Mississippi Constitution, the contract at issue must have been made under the authority of a statute that affects the ability of the parties to enforce that contract, either because the statute has been amended or repealed. . . . In this case, the Whitakers did not rely on any statutory authority when they entered into the contract with Progressive. Instead, *they entered into the contract based upon prior judicial decisions* regarding the release of a tortfeasor in a vicarious liability situation. Accordingly, the contracts clause of the Mississippi Constitution is not applicable.

***Whitaker***, 2007 Miss. App. LEXIS 634 at *9 (emphasis added). This conclusion is erroneous as a matter of law.

¶23. As a general rule, "all judicial decisions apply retroactively unless the Court has specifically stated the ruling is prospective." ***Cleveland v. Mann***, 942 So. 2d 108, 113 (Miss. 2006) (citations omitted). Furthermore, "newly enunciated rules of law are applied retroactively to cases that are pending trial or that are on appeal, and not final at the time of the enunciation." ***Thompson v. City of Vicksburg***, 813 So. 2d 717, 721 (Miss. 2002).

14

¶24. However, the Contracts Clause of the Mississippi Constitution provides, "[e]x post facto laws, *or laws impairing the obligation of contracts*, shall not be passed." Miss. Const. art. 3, § 16 (emphasis added). We have stated that "[t]he Constitution denies to the states the power to enact any law impairing the obligations of contracts. U.S. Const. Art.1, § 10, cl. 1; *see also* Miss. Const. Art.3, § 16 (1890)." **Collier v. Shell Oil Co.**, 534 So. 2d 1015, 1018 (Miss. 1988) (citations omitted). This Court has further held that the same constitutional provisions require that "[i]f a contract when made was valid under the laws of the state as then expounded and administered in its courts of justice, 'its validity and obligation cannot be impaired by any subsequent action of legislation, *or decision of its courts altering the construction of the law*.'" **Wisconsin Lumber Co. v. State of Mississippi**, 97 Miss. 571, 598, 54 So. 247, 249-50 (1910) (emphasis added). *See also* **Poole v. Brunt**, 338 So. 2d 991, 995 (Miss. 1976); **Miss. State Tax Comm'n v. Brown**, 188 Miss. 483, 509, 193 So. 794, 802 (1940) ("[t]his Court has given protection to citizens from the effect of overruling cases, holding that transactions had or done under a construction making the act valid at the time it was done continue legal, although afterwards a change of decision was made by the Court."); **Yazoo & Miss. Valley R.R. Co. v. Adams**, 81 Miss. 90, 116, 32 So. 937, 946 (1902) ("[t]he constitutional barrier to legislation impairing the obligation of contracts applies also to decisions altering the law, . . . so as to affect the obligations of existing contracts made on the faith of the earlier adjudications."); **Ohio Life Ins. and Trust Co. v. DeBolt**, 57 U.S. 416, 432, 14 L. Ed. 997, 1004 (1854) ("the sound and true rule is, that if the contract when made was valid by the laws of the State, as then expounded by all the departments of its government, and administered in its courts of justice, its validity and obligation cannot be

15

impaired by any subsequent act of the legislature of the State, *or decision of its courts*, altering the construction of the law.") (emphasis added). In support of this position, this Court stated in 1915:

> [t]he argument on behalf of the state is that when a decision is overruled, in legal contemplation, the decision never existed. This argument has been met and satisfactorily answered in the adjudicated cases. It is also said that every man is presumed to know the law, and no one can take . . . shelter under an erroneous decision of the highest court. This argument is, in our opinion, manifestly faulty. If the legal maxim has any application to a case like this, and is controlling, the maxim must be amended to read thus: "Ignorance of the law excuses no man, except members of the supreme judicial tribunal of the state."

*State v. Longino*, 109 Miss. 125, 135, 67 So. 902, 904 (1915).

¶25. When the 2000 Release and the 2002 "Settlement Agreement and Release" were executed, *W.J. Runyon & Son, Inc. v. Davis*, 605 So. 2d 38 (Miss. 1992), was the controlling authority, providing that the release of an agent has no effect on the principal's vicarious liability. *See id*. at 43. The Court of Appeals recognized that the Whitakers "entered into the contract based upon prior judicial decisions regarding the release of a tortfeasor in a vicarious liability situation." *Whitaker*, 2007 Miss. App. LEXIS 634, at *9. Not until *J&J Timber* was handed down on May 4, 2006, did this Court conclude that "[t]o the extent that *Runyon* holds that a vicarious liability claim can be maintained against the employer after the employee is released, without an allegation of independent negligence by the employer, that case is overruled." *J&J Timber*, 932 So. 2d at 6-7. However, *Wisconsin Lumber* is authority for the legal proposition that the "validity and obligation" of any contract cannot be "impaired by any" Mississippi court decision "altering the construction of the law." *Wisconsin Lumber*, 54 So. at 249-50 (citations omitted). As *J&J Timber* was

16

determined to have that effect, it should not have been applied retroactively to either release.[7]

Any holding otherwise fundamentally errs in limiting applicability of the Contracts Clause of the Mississippi Constitution to statutory amendments and repeals. *See Whitaker*, 2007 Miss. App. LEXIS 634, at *9. Such a conclusion is not supported by our well-developed case law to the contrary. *See* paragraph 24 *supra*. Accordingly, this Court concludes that the Contracts Clause of the Mississippi Constitution prohibits the retroactive application of *J&J Timber* to either release.

## CONCLUSION

¶26. Based upon the aforementioned analysis, this Court reverses the judgments of both the Court of Appeals and the Circuit Court of Lee County and remands this case to the circuit court for proceedings consistent with this opinion. Such proceedings necessarily shall require the determination of the validity, *vel non*, of the first release, utilizing the legal standards in effect at the time of its execution.

¶27. **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON, LAMAR, KITCHENS, AND PIERCE, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY. CARLSON, P.J., AND CHANDLER, J., NOT PARTICIPATING.**

---

[7]The proper standard to evaluate either release is the law in place at the time of its execution.