## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-IA-01420-SCT

*MISSISSIPPI FARM BUREAU CASUALTY*
*INSURANCE COMPANY*

*v.*

*MARTIN PETEET*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/08/2021 |
| TRIAL JUDGE: | HON. LARITA M. COOPER-STOKES |
| TRIAL COURT ATTORNEYS: | JOE S. DEATON, III |
| | R. JASON CANTERBURY |
| | JUSTIN PERRY WARREN |
| | WILLIAM WALKER, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY COUNTY COURT |
| ATTORNEYS FOR APPELLANT: | JOE S. DEATON, III |
| | R. JASON CANTERBURY |
| ATTORNEY FOR APPELLEE: | WILLIAM WALKER, JR. |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND RENDERED - 04/06/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KITCHENS, P.J., MAXWELL AND CHAMBERLIN, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     This case is before the Court on interlocutory appeal of the denial of a motion to dismiss. Following a vehicular accident, Martin Peteet entered into a release and settlement agreement with the driver of the other vehicle and her insurer. Peteet did not seek a waiver of subrogation or consent from his own automobile insurer, Mississippi Farm Bureau Casualty Insurance Company (Farm Bureau), prior to executing the release and settlement agreement. After the release and settlement agreement was executed, Peteet filed a complaint

against Farm Bureau, seeking damages under the uninsured motorist (UM) provision in his auto policy with Farm Bureau. Farm Bureau moved to dismiss the complaint, and the county court denied the motion. Farm Bureau sought an interlocutory appeal, which this Court granted. After a careful review of the law, this Court reverses the denial of the motion to dismiss and renders judgment in favor of Farm Bureau.

## FACTS AND PROCEDURAL HISTORY

¶2.     On June 12, 2019, Martin Peteet was involved in a two-vehicle accident with Maurisha Bland. On February 5, 2020, Peteet entered into a Full, Final and Absolute Release of All Claims, Settlement and Indemnity Agreement (the Agreement) with Bland and her insurer, Mountain Laurel Assurance Company (Mountain Laurel), in exchange for $25,000. On September 24, 2020, Peteet filed a complaint against his own insurer, Farm Bureau, alleging that Farm Bureau breached its contract with Peteet "in that [Peteet]'s damages exceed[ed] the policy limit paid by [Mountain Laurel]," and Peteet expected Farm Bureau to pay out the remainder of the claim. Peteet argued that the UM provision in his auto policy with Farm Bureau covered up to $50,000 per accident and was intended for this exact purpose. Since Peteet received only $25,000 in the Agreement—Bland's policy limit with Mountain Laurel—he argued that the remainder of his damages from the accident should be paid to him by Farm Bureau under the auto policy's UM provision.

¶3.     In its answer, Farm Bureau moved to dismiss the complaint under Mississippi Rule of Civil Procedure 12(b)(6) for failure to state a claim. Farm Bureau argued that since Peteet had entered into the Agreement with Bland and Mountain Laurel without first seeking a waiver of subrogation or other consent from Farm Bureau, Peteet was barred from

2

proceeding against Farm Bureau under his UM coverage. Farm Bureau argued that Mississippi Code Section 83-11-107 established its subrogation rights and that Mississippi caselaw supported its position that cutting off the insurer's right of subrogation prohibited the insured from further proceeding against the insurer for a claim under the insurance policy.

¶4. Hearings on Farm Bureau's motion to dismiss were held on January 21, 2021, and March 4, 2021. On December 8, 2021, the court denied Farm Bureau's motion to dismiss. On December 29, 2021, Farm Bureau timely petitioned this Court for permission to file an interlocutory appeal and requested a stay of the trial court proceedings. On February 2, 2022, this Court granted the request for interlocutory appeal and stayed the trial court proceedings.

**STANDARD OF REVIEW**

¶5. "Appellate review of a trial court's decision to grant or deny a motion to dismiss is de novo." *Progressive Gulf Ins. Co. v. Kaur*, 323 So. 3d 1087, 1089 (Miss. 2021) (citing *Johnson v. Rao*, 952 So. 2d 151, 154 (Miss. 2007)). "When this Court reviews a grant or denial of a motion to dismiss, it 'take[s] the allegations of the complaint as true, and [it] affirm[s] only when "it appears beyond a reasonable doubt that the plaintiff will be unable to prove any set of facts in support of his claim."'" *Univ. of Miss. Med. Ctr. v. Jensen*, 334 So. 3d 78, 81 (Miss. 2022) (alterations in original) (quoting *Great Am. E & S Ins. Co. v. Quintairos, Prieto, Wood & Boyer, P.A.*, 100 So. 3d 420, 422 (Miss. 2012)).

**DISCUSSION**

¶6. The single issue on appeal is whether the county court erred by denying Farm Bureau's motion to dismiss. Farm Bureau argues that the Agreement executed between Peteet, Bland and Mountain Laurel cut off its subrogation rights—which it is entitled to

3

statutorily and contractually—and barred Peteet from proceeding against Farm Bureau for damages under the UM coverage.

¶7.     Peteet's UM coverage with Farm Bureau defines an *uninsured motor vehicle* to include:

> 2.     That is an underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle or trailer for which the sum of the limits of liability under all bodily injury liability policies applicable at the time of the auto accident is less than the sum of:
>
> > a.     The limit of liability for uninsured motorist coverage applicable to the vehicle the insured was occupying at the time of the auto accident; and
> >
> > b.     Any other limits of liability for uninsured motorist coverage applicable under policies affording uninsured motorist coverage to the insured as a named insured or family member.

Bland's limit of liability with Mountain Laurel was $25,000, which is less than the UM coverage Peteet held with Farm Bureau, making her an underinsured motorist. Peteet's policy then goes on to list exclusions from UM coverage, stating that coverage will not be provided "[i]f any insured or their legal representative settles the bodily injury or property damage claims without our expressed written agreement." Furthermore, Part F of the auto policy states that Farm Bureau "shall be subrogated" to the insured's right to recover damages from an accident that is covered by the policy.

¶8.     Aside from the contractual requirements to give consent to any settlement of claims and to be subrogated to an insured's right to recover, Mississippi Code Section 83-11-107 provides that an insurer has a right to subrogation:

> An insurer paying a claim under the endorsement or provisions required by Section 83-11-101 or Section 83-11-102 *shall be subrogated to the rights*

4

*of the insured* to whom such claim was paid against the person causing injury, death, or damage to the extent that payment was made, including the proceeds recoverable from the assets of the insolvent insurer.

Miss. Code Ann. 83-11-107 (Rev. 2022) (emphasis added). The Agreement between Peteet, Bland and Mountain Laurel released Bland and Mountain Laurel from any future claims arising from the accident, whether instituted by Peteet or any other person or persons.[1]

¶9. The law has long been established in the state of Mississippi that when there is in the insurance contract a subrogation right and the insured releases the person whose negligence is the proximate cause of any damage to the insurable interest and thereby the insurer is prohibited from proceeding against the tortfeasor, the insured has no further rights to proceed against the insurer.

*Thompson v. Aetna Ins. Co.*, 245 So. 2d 206, 207 (Miss. 1971); *see also Twin States Ins. Co. v. Bush*, 183 So. 2d 891, 893 (Miss. 1966); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 200 Miss. 702, 28 So. 2d 571, 573 (Miss. 1947); *Farmer v. Union Ins. Co. of Ind.*, 146 Miss. 600, 111 So. 584, 586 (Miss. 1927). This Court has determinatively stated that an insured who executes a settlement and release agreement with an uninsured

---

[1]Specifically, the Agreement stated that:

9. [Peteet] does hereby further covenant and agree that he will never institute in the future any complaint, suit, action or cause of action, in law or in equity, against [Bland and Mountain Laurel], nor institute, prosecute or in any way aid in the institution or prosecution of any claim, demand action, cause of action or suit for damages, expenses, costs, or loss from or as a consequence of the aforesaid automobile accident and/or resulting alleged injuries and damages to [Peteet], whether such injury, damage, cost, loss or expense is known or unknown, past, present or future.

10. [Peteet] further represents and warrants that no other person or persons has or can have any claim or cause of action which may be asserted for or on behalf of [Peteet] for the injuries and damages alleged to have been incurred as a result of the accident on or about June 12, 2019.

5

motorist—effectively cutting off their own insurer's right of subrogation—cannot then proceed against their own insurer. *See **Thompson***, 245 So. 2d at 207.

¶10.    In ***United States Fidelity and Guaranty Co. v. Hillman***, Frances Hillman was involved in a motor vehicle accident with an uninsured motorist. ***U.S. Fid. & Guar. Co. v. Hillman***, 367 So. 2d 914, 915 (Miss. 1979). Hillman brought suit and received a $10,000 judgment against her insurer, United States Fidelity & Guaranty Company (Fidelity), under the UM provision of her policy. ***Id.*** at 914-15. Fidelity appealed the judgment, arguing that Hillman had unlawfully cut off its subrogation right by signing a release agreement with the other motorist involved in the accident, who was uninsured. ***Id.*** at 915. Hillman's policy with Fidelity contained the following exclusion provision:

> This policy does not apply under Part IV (Uninsured Motorists Section)
>
> (b) to bodily injury to an Insured with respect to which such insured, his legal representative or any person entitled to payment under this coverage shall, without written consent of [U.S. Fidelity], make any settlement with any person or organization who may be legally liable therfor.

***Id.*** at 916. This Court reversed and rendered judgment in favor of Fidelity, stating that "[t]he clear and unambiguous provisions of the insurance contract, the subrogation right vested in the insurer by statute, under principles announced and adhered to by this Court for many years, require that recovery against the insurer under the circumstances of this case be denied." ***Id.*** at 922.

¶11.    In ***St. Paul Property and Liability Insurance Co. v. Nance***, Rhonda Pierce and George Nance were involved in an automobile accident in which Pierce suffered serious personal injuries. ***St. Paul Prop. & Liab. Ins. Co. v. Nance***, 577 So. 2d 1238, 1239 (Miss.

1991). Pierce held automobile insurance with St. Paul Property and Liability Insurance Company (St. Paul), and Nance had coverage from Allstate Insurance Co. (Allstate). *Id.* Pierce's policy was for $100,000 in UM coverage, while Nance's policy covered $10,000 for damages caused by the insured's negligence. Pierce brought suit against Nance, and Allstate defended the suit. *Id.* Ultimately, Pierce entered into a settlement agreement with Nance and Allstate for $9,000 in exchange for a dismissal of the action and a release of Nance and Allstate "from any further claims arising out of the . . . accident." *Id.* After the agreement was executed, Pierce filed a complaint against her own insurer, St. Paul, claiming it was liable for damages as her UM carrier. *Id.* at 1240. That claim was settled for $26,000. *Id.*

¶12.　St. Paul then proceeded to file a complaint against Nance for $26,000, the amount it paid to Pierce to settle her UM claim. *Id.* Nance responded to the complaint "and pled accord and satisfaction, compromise and settlement, payment and release." *Id.* Since St. Paul's claim against Nance was one based in its right of subrogation, the Court determined that St. Paul could not proceed against Nance:

> Subrogation is the substitution of one person in place of another, whether as a creditor or as the possessor of any rightful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and to its rights, remedies, or securities.

*Id.* at 1240-41 (quoting *Ind. Lumbermen's Mut. Ins. Co. v. Curtis Mathes Mfg. Co.*, 456 So. 2d 750, 754 (Miss. 1984)). Therefore, when St. Paul pursued the claim against Nance, it "obtain[ed] no greater right in the thing assigned than was possessed by [Pierce], but simply [stood] in the shoes of the latter and [St. Paul's] right [could] rise no higher than [Pierce's]." *St. Paul*, 577 So. 2d at 1241 (quoting *Ind. Lumbermen's*, 456 So. 2d at 754).

7

Since Pierce had already executed a settlement and release agreement with Nance, cutting off St. Paul's subrogation right, St. Paul could not proceed against Nance. ***St. Paul***, 577 So. 2d at 1242.

¶13.    The entirety of Peteet's argument defending the trial court's denial of the motion to dismiss is nine lines long. Peteet argues that ***Whitaker v. T & M Foods, Ltd.***, 7 So. 3d 893 (Miss. 2009), is dispositive, overrules all the cases cited by Farm Bureau, and directs this Court to affirm the trial court's decision in this case. We disagree and find that ***Whitaker*** has no bearing on the present case.

¶14.    In ***Whitaker***, this Court addressed whether the Contracts Clause of the Mississippi Constitution prohibited the retroactive application of a new decision by this Court that altered the rights of the parties under an existing contract. ***Id.*** at 898. The Whitakers were involved in an automobile accident with Robert Kent, who was working in the course and scope of his employment as a delivery driver for T & M Foods at the time of the accident. ***Id.*** at 894. Before learning of the extent of their injuries, the Whitakers entered into a settlement and release agreement with Progressive Gulf Insurance (Progressive), Kent's liability insurer, which released both Progressive and Kent from further claims arising from the accident. ***Id.*** at 894-95. "Soon thereafter, Mrs. Whitaker was diagnosed with temporomandibular joint pain syndrome. Her physician identified the automobile accident as a contributing factor to the condition." ***Id.*** at 895. The Whitakers filed a complaint against Progressive, Kent and T & M Foods,[2] seeking to invalidate the release and arguing that "[n]otwithstanding the

---

[2]The Whitakers initially filed against Progressive, Kent and Steak-Out Franchising, Inc., and later amended their complaint to replace Steak-Out with T & M Foods. ***Id.***

8

Release, [Progressive] and [Kent] and [T & M Foods were] jointly liable for [Whitaker's] injuries." *Id.* (first, second, third, and fifth alterations in original) (internal quotation mark omitted).

¶15.    While this case was pending, Progressive entered into a second settlement and release agreement with the Whitakers. *Id.* Under this new agreement, the first agreement was declared void, the Whitakers received an additional payment, Progressive was released from all future claims and the Whitakers agreed to "*not seek execution against personal assets of [Kent]* and, instead, will seek to satisfy any judgment *only from assets of T & M Foods, and from any liability insurance carrier of [T & M Foods]. . . .*" *Id.* at 895-96 (first and second alterations in original). Essentially, the new agreement kept Kent in the case for the sole purpose of seeking a judgment against his employer, T & M Foods, under a theory of respondeat superior. *Id.* at 897.

¶16.    Four days before trial, this Court handed down an opinion, that overruled previous precedent and held that "[w]here a party's suit against an employer is based on *respondeat superior*, the vicarious liability claim itself is extinguished when the solely negligent employee is released." *J & J Timber Co. v. Broome*, 932 So. 2d 1, 6 (Miss. 2006). The circuit court applied the new holding from *Broome* to the Whitakers' case, rendered judgment in favor of T & M Foods and Kent, and dismissed them both with prejudice. *Whitaker*, 7 So. 3d at 897. The Court of Appeals affirmed, and, on writ of certiorari, this Court reversed and remanded the case. *Whitaker*, 7 So. 3d at 897, 903. This Court determined that the application of *Broome* violated the Contracts Clause of the Mississippi Constitution since it altered the parties' rights in the release contracts and made unlawful

9

what was lawful when the parties executed the release contracts, i.e. "that the release of an agent has no effect on the principal's vicarious liability." *Whitaker*, 7 So. 3d at 902.

¶17. The present case in no way implicates the *Whitaker* holding concerning the retroactive application of *Broome*. Neither vicarious liability nor retroactive action is at issue here. *Whitaker* does not discuss the impact of a release and settlement agreement on an insurer's subrogation rights. Moreover, *Whitaker* does not address the issue of subrogation rights at all. It simply does not change or affect the controlling law in this case. Mississippi caselaw is clear, and it provides that by cutting off Farm Bureau's right of subrogation without its consent, Peteet is barred from proceeding against Farm Bureau under the UM provision in his policy.

## CONCLUSION

¶18. Farm Bureau has a right of subrogation by statute and contract. The execution of the Agreement between Peteet, Bland and Mountain Laurel unlawfully cut off Farm Bureau's right of subrogation without Farm Bureau's consent. Farm Bureau has no duty to pay for Peteet's claim under the UM provision. This Court reverses the trial court's denial of the motion to dismiss and renders judgment in favor of Farm Bureau.

¶19. **REVERSED AND RENDERED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR.**

10